NANCY J. TUCKER, ADMINISTRATRIX, v. THOMAS DRAPER, ADMINISTRATOR.

FILED JUNE 5, 1901.    No. 9,467.

Commissioner's opinion. Department No. 2.

1. **Injury by Wrongful Act: RESPONSIBILITY OF LANDLORD TO GUEST.** One who goes upon the premises of another, by express or implied invitation of the owner, may recover damages for an injury caused by a failure on the part of such owner to keep the premises in a reasonably safe condition.

2. **For Death of Intestate, Petition Must Show Pecuniary Injury to Widow or Next of Kin.** In an action by an administrator to recover damages for the death of his intestate under chapter 21, Compiled Statutes, the petition must show a pecuniary injury to the widow or next of kin, but as against a general demurrer it is sufficient in that regard to allege that "by reason of the death of the intestate and the loss of the service and society and fellowship of the said intestate the plaintiff has been damaged in the sum of five thousand dollars."

3. **Question of Negligence for Jury.** In such action, unless the facts are undisputed and are of such a nature that ordinary minds would not differ in their judgment of them, the question of negligence must be submitted to the jury.

4. **Evidence Sufficient.** Evidence examined and found sufficient to warrant the trial court in submitting the question of negligence to the jury.

5 **Instruction: DEATH OF CHILD: CONTRIBUTORY NEGLIGENCE OF FATHER.** In such action for the death of a child, the father as administrator being plaintiff, it is error to instruct the jury that contributory negligence of the father is no defense.

ERROR from the district court for Lancaster county. Tried below before HALL, J. *Reversed.*

*Field & Brown,* for plaintiff in error.

*E. J. Burkett* and *Lamb & Adams, contra.*

Argued orally by *Allen W. Field,* for plaintiff in error; and by *George A. Adams, contra.*

SEDGWICK, C.

The plaintiff sued as administrator of his son, a child three years and three months of age, who was killed by falling into a well on the premises of the defendant. There was a trial with a jury and verdict for the plaintiff. The defendant's motion for a new trial was overruled and judgment entered on the verdict. The case is brought here upon petition in error.

The defendants insist that the petition was insufficient, and that the general demurrer thereto ought to have been sustained by the court. And the first ground of this objection is that as the accident occurred on the private property of the defendant and in the absence of an express or implied invitation to the deceased child to go upon the premises there can be no recovery; and that the facts alleged in the petition fail to show such invitation. There is some repetition and some incoherency in the petition, but it contains the allegations that defendants permitted the public in general to use the lots for hitching horses and teams, and permitted their use by the patrons of the saloon and other persons desiring places to hitch horses and teams during their temporary

stay in the city of Lincoln, and the lots were thrown open to the public in connection with said saloon so as to better enable the tenant to rent said saloon and make it bring a better rental and more money to the owners; and for said reason the public was, by defendant, notified and invited to go upon said lots and use them as above stated; and said lots and premises were by defendants thrown open to the public in general, and the general public was, by defendant, invited to enter and use the same as public property. As against a general demurrer we think there is here an allegation that the lots were thrown open to the general public and the general public was invited to use the lots as public property, and the deceased child being one of the general public he was of course embraced in the invitation.

2. The second objection to the sufficiency of the petition is, that there is no sufficient allegation of pecuniary loss to the plaintiff. The allegation is that "by reason of the death of the said Harry Draper the plaintiff has been damaged by reason of the loss of the service and society and fellowship of the said Harry Draper in the sum of $5,000." It is assumed that the society and fellowship of one's children have no pecuniary value. Some courts have so expressed themselves, but we do not find it necessary to discuss that proposition. In *Hurst v. Detroit City Railway*, 84 Mich., 539, 48 N. W. Rep., 44, the supreme court of Michigan in a well reasoned opinion, citing many authorities, concludes that "pecuniary injury must be alleged and proved." There was no allegation of loss of service nor of actual pecuniary damage. The allegation was, "by reason of which negligence of said defendant and injury to and death of said Lorenzo Hurst an action has accrued to said plaintiff as representative of the next of kin of said Lorenzo Hurst, and in which he claims damages from said defendant in the sum of $10,000." The court said: "It is argued however, by counsel, that this statute declares the liability of the person or corporation whose negligence caused the death, and that therefore,

no evidence of pecuniary damages was requisite to entitle the next of kin to maintain the action and recover such damages; the statute leaves the jury to give such damages as they shall deem fair and just"; and held that there must be a special allegation of pecuniary loss in the petition, which must be supported by proof. See also *Orgall v. Chicago, B. & Q. R. Co.*, 46 Nebr., 4; *Kearney Electric Co. v. Laughlin*, 45 Nebr., 390. In *Chicago, B. & Q. R. Co. v. Van Buskirk*, 58 Nebr., 252, the action was brought by the administrator of the estate of Charles P. Van Buskirk, deceased; and the petition alleged that "the said Charles P. Van Buskirk has neither wife nor children, but left Alonzo J. Van Buskirk, Mary P. Van Buskirk, his parents, and Gertrude G. Eledge, Lewis G. Van Buskirk, * * * brothers and sisters, who are heirs at law and next of kin, who have been damaged in the sum of $5,000." This petition was precisely within the rule announced in *Hurst v. Detroit City Railway*, 84 Mich., 539, and other cases, and was clearly insufficient, and was so held. In the opinion it is said, that it is necessary to aver a loss of means of support where from the relation of the survivors the law would not presume that from his death such survivors had been deprived of their means of support; but it was not intended to declare the rule that the action can not be maintained unless it in some way appears that the survivors of the deceased have lost their means of support. Loss of means of support is pecuniary injury, but it by no means follows that it is the only pecuniary injury for which a recovery may be had in such actions. *City of Friend v. Burleigh*, 53 Nebr., 674. The services might be valuable to a parent entitled thereto who was in such financial condition as not to be dependent upon such services.

3. The defendants insist that there was not sufficient evidence to warrant the submission of the issues to the jury. The case of *Richards v. Connell*, 45 Nebr., 467, is cited as decisive of this question. In that case the court

said: "The owner of a vacant lot upon which is situated a pond of water or dangerous excavation is not required to fence it, or otherwise insure the safety of strangers, old or young, who may resort to said premises not by invitation, express or implied, but for the purpose of amusement or from motives of curiosity." A boy of about ten years of age who was accustomed to play in and about a pond of water in a vacant lot, the property of defendant, fell from a section of sidewalk which he was using as a raft on the pond, and was drowned. The defendant had permitted the surface water to accumulate on this lot, he had nothing to do with causing it to accumulate there, the pond was formed in the course of nature. The boy formed a raft, and "went on said pond floating thereon." He was capable of constructing and did construct the "raft" that caused his death, negligence and even recklessness was properly chargeable against him, and it was held that the defendant was not liable. We have no doubt that under the facts in that case the law was correctly applied. The case of *City of Omaha v. Bowman*, 52 Nebr., 293, is similar in character. "A body of water—either standing, as in ponds and lakes; or running, as in rivers and creeks; or ebbing and flowing, as on the shores of seas and bays—is a natural object, incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view, consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall." *Peters v. Bowman*, 47 Pac. [Cal.], 113; *City of Omaha v. Bowman, supra.* "There is no hard and fast rule applicable to every one under like circumstances. To an adult, in full possession of his mental and physical powers, one standard may be applied; to a boy, particularly if he be of limited intelligence, another standard; and to

an infant not *sui juris* and totally ignorant of danger, still another." *Baltimore & P. R. Co. v. Cumberland*, 20 Sup. Ct. Rep., 380; *Huff v. Ames*, 16 Nebr., 139. "Much may depend upon the character of the injury, the circumstances under which it occurred, and the size, intelligence and maturity of the child. In such cases a jury must be allowed to pass upon the question of contributory negligence; it is error to rule it as a question of law." *Gillespie v. McGowan*, 100 Pa. St., 144, 45 Am. Rep., 365, 368. It is only where the facts are undisputed and are of such a nature that ordinary minds would not differ in their judgment of them that the question is one of law for the court.

In *Richards v. Connell, supra*, it is said "that plaintiff can recover in cases where the plaintiff was injured while upon defendant's premises by invitation of the latter, and where the negligence consists in a failure to keep such premises in a reasonably safe condition." It appears that these premises, consisting of three lots in the heart of the city of Lincoln, had a saloon located at one corner of the tract; that the lots were so situated that teams could drive thereon immediately from the principal streets of the city, and that people had frequently been invited by the owner to use the lots for the purpose of hitching their teams, and that the citizens generally did so, both those who patronized the saloon and others; that there had been shows or some kind of public entertainments upon the lots at different times and people had frequented them at such times, the people being, as one of the witnesses expressed it, "as thick as they could stand"; that there were at one time stairs put in at least two places to enable the people to go on the lots directly from the sidewalk on one side thereof, and it does not appear how long these stairs so remained, or whether they were taken away; the evidence also tends to show that a neighbor was allowed to, and did, use the lots for storing sewer-tiling, and that piles of said tiling, three to five feet in height and covering a

considerable space, were at times upon said lots; that the well was located in an open part of said lots about twenty feet from the said tiling; that the well was something more than twenty feet deep, and that the top was surrounded by a curb ten or twelve inches high, which had been covered over with boards; that these boards, or at least some of them, were loose and had been removed and had been allowed to remain so for six months or more immediately prior to the accident; that there was a path running somewhere in the lots and within three or four feet of the well; that it was a very public place, and that the boys of the city had frequently played ball on an adjoining lot and on such occasions had, in playing ball, run across the lot in question; that they were playing ball there on the day of the accident, and not long before the accident one of the boys in chasing the ball, nearly ran into the well; that the health officer of the city, some two or three years before the accident, called the attention of the owner of the premises to the dangerous condition of the well, and was told by the owner to go to h—, that he would run his own business; and that the well had thereafter remained substantially in the same condition until the accident; that on the day of the accident the deceased boy, with his little brother who was about five years old, walked down to the livery stable near the premises, where their father's family horse was kept, to see the horse, and then walked from there over to these lots and to the well in question; and the little boy in question while standing by the well and without any apparent cause, was seen by one of the witnesses "just stand and fall into the well apparently reaching for something"; that the persons employed by the defendant to take care of the premises must have known the condition of the premises and how it was being used and the apparent danger from the well.

There may be, and often are, circumstances under which one owes some active duty to a trespasser upon his premises. If a man willfully lies down upon a rail-

road track the engineer must not wantonly run his engine over him.  One may not set a snare or spring gun for trespassers, and, knowing that some stranger had placed the snare or spring gun, if he wantonly allows it to remain he will be responsible for the consequences. A well may be so contrived as to act as a dangerous trap, and one who allows it so to remain upon his premises will, under some circumstances, be liable.  If adults, or children of such age as to ordinarily be capable of discerning and avoiding danger are injured while trespassing upon the premises of another, they may be without remedy, while under similar circumstances children of three or four years of age would be protected.  If I know that there is an open well upon my premises and know that children of such tender years as to·have no notion of their danger are continually playing around it and I can obviate the danger with very little trouble to myself and without injuring the premises or interfering with my own free use thereof, I owe an active duty to those children, and if I neglect that duty and they fall into the well and are killed it is through my negligence; I can not urge their negligence as a defense, even though I have never invited or encouraged them expressly or impliedly to go upon the premises.  In *Kinchlow v. Midland Elevator Co.*, 46 Pac. Rep. [Kan.], 703, a boy ten years of age who was by permission of the company, assisting in sweeping grain cars for which he and other boys were paid by being allowed the grain which they so gathered, went to an exhaust-steam barrel to warm his feet.  He had no permission from the company to go there, and in stepping upon the cover (which was loose) the cover tipped and he fell into the barrel, scalding his feet and legs.  The court said: "We think it ought to have been submitted as a question of fact for the jury to determine upon the evidence whether the defendant was guilty of negligence or not in placing the barrel in that position, and in maintaining it with such an insecure cover; and also whether or not, considering the age and capabilities of the plain-

tiff, he was guilty of contributory negligence in stepping upon the cover." The court also quotes the following from an opinion of the supreme court of Michigan: "A license to come upon one's premises, especially if in the licensor's interest, imposes upon him the duty to warn those who come, of any danger in coming of which he knows or ought to know and they do not." And the court also quoted the following from the supreme court of Pennsylvania: "While it is true, in general, that where no duty is owed no liability arises, this rule varies with circumstances, and where, therefore, an owner has reason to apprehend danger from the peculiar situation of his property and its openness to accident, the question of duty then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence." The demurrer to the evidence which the trial court sustained, was overruled by the supreme court.

In *Hargreaves v. Deacon*, 25 Mich., 1, the cistern into which the child fell was made for the lawful use of the owner, and was then being used in the customary way; there was no evidence of its having been abandoned or that the owner knew that little children were accustomed to play around it; there was "nothing to indicate any wanton or inhuman disposition in the defendant"; the defendant had not allowed the cistern to remain uncovered, but in using the cistern the cover had been temporarily removed. From the very interesting opinion of Mr. Justice Campbell, it appears that if there had been circumstances in the case indicating a wanton or inhuman disposition in the defendant he would have been held liable. In *Klix v. Nieman*, 32 N. W. Rep. [Wis.], 223, a boy of nine years "while playing upon and about a pond of water on defendant's premises, was drowned." In holding the defendant not liable the court said: "Unless we hold that the defendant was under a legal obligation to fence this pond for the protection of children reaching and playing upon it, there can be no recovery. And it is

obvious that a fence would have to be very high and very tight to afford any effectual guard against children having access to the pond. But upon the facts, we do not think the law imposed the duty upon the defendant of building a fence or guard to prevent children from reaching the pond." In the case at bar the well was apparently of no use to any one, it ought to have been filled, or at any rate it could easily have been put in such condition as to have prevented this accident.

We are not called upon to say what finding we would make upon the evidence in this record. We think it was for the jury to say whether there was an implied invitation to go upon these lots which included this little boy, and whether there was on the part of the owners of the premises such recklessness of danger to little children as to "indicate a wanton and inhuman disposition in the defendant." The former question was submitted by the trial court with proper instructions and defendant can not complain of a failure to submit the latter.

The trial court excluded evidence offered by the defendant to show contributory negligence on the part of the plaintiff; there were circumstances shown in the evidence sufficient to require this question to be submitted to the jury if, under the law, contributory negligence of the plaintiff would constitute a defense in this case; but the court instructed the jury that "contributory negligence on the part of either or both his parents under the law is no bar to this action"; and this instruction is complained of as error. Under our statutes, if the "neglect" was such as would have entitled the party injured "to maintain an action and recover damages in respect thereof," then the person who would have been liable if death had not ensued "shall be liable to an action for damages." Under a statute which provides, that all causes of action shall survive, an action was brought by an administrator for the benefit of the estate of a child whose death was caused by the negligence of the county; the negligence of the parents contributed to the injury.

Neither the father nor mother was a party to the action. The court said: "It is claimed that appellant ought not to recover, for the reason that it is not shown that the parents of the child were free from contributory negligence; and, since they inherited his estate, the rule which would bar a negligent parent from recovering in such a case in his own right ought to apply. But plaintiff seeks to recover in the right of the child, and not for the parents," and "such negligence would prevent a recovery by the parents in their own right." *Wymore v. Mahaska County*, 43 N. W. Rep. [Ia.], 264. It was clearly shown by the supreme court of Vermont in *Ploof v. Burlington Traction Co.*, 41 Atl. Rep., 1017, that the case last cited is not in point under a statute like ours. Under our statutes the intestate's right of action does not survive. No action can be brought for the benefit of his estate. The petition must show a pecuniary injury to the wife and next of kin. *Chicago, B. & Q. R. Co. v. Van Buskirk*, 58 Nebr., 252, and cases cited. In this case the father is the next of kin; he is also the administrator and the plaintiff in the case, suing for his own benefit. Shall the state say to the father, "If you know that your child is in danger of injury from the negligence of others you are under no legal obligation to protect it from such injury, and if you allow the child to be killed, you may recover, from one who is equally at fault with yourself, for any pecuniary injury you may suffer by reason of the death"? No such meaning can be derived from the statute. The negligence of the father can not be imputed to the child and in an action for the benefit of the child, or of his estate, where such action is allowed, the negligence of the father is no defense. *Huff v. Ames*, 16 Nebr., 139. But in an action by the father for his own benefit to recover for the pecuniary injury which he has suffered by reason of the death of the child, his own negligence contributing to the death will defeat his recovery. *Atlanta & C. A. L. R. Co. v. Gravitt*, 26 L. R. A., 553, 20 S. E. Rep. [Ga.], 550.

In the case of the *Consolidated Traction Co. v. Hone*, 35 Atl. Rep. [N. J.], 899, the supreme court of New Jersey announced a different rule. The supreme court of Vermont in *Ploof v. Burlington Traction Co.*, cited above, criticises the New Jersey case, and says: "The opinion cites —evidently without careful consideration—the Iowa case as supporting the decision." But the New Jersey court of errors and appeals had already reviewed the decision of the lower court, and being equally divided upon the question here considered reversed the decision of the lower court upon another point. *Consolidated Traction Co. v. Hone*, 38 Atl. Rep. [N. J.], 759.

We think that the question of contributory negligence ought to have been submitted to the jury, and for the error of the trial court in refusing to do so it is recommended that the judgment be reversed, and the cause remanded for a new trial.

OLDHAM and POUND, CC., concur.

By the Court : For the reasons stated in the foregoing opinion the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.