JOHN MCCULLOUGH, BY JOHN W. MCCULLOUGH, HIS FATHER AND NEXT FRIEND, APPELLEE, v. OMAHA COLISEUM CORPORATION, APPELLANT.

12 N. W. 2d 639

FILED JANUARY 7, 1944. No. 31681.

Kennedy, Holland, DeLacy & Svoboda and *Edwin Cassem*, for appellant.

*Gordon Diesing, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is a law action. Plaintiff charged defendant with negligence in the maintenance, and in keeping in an unsafe condition the ice surface, of an ice skating rink, and in failing to limit the number of skaters thereon to a reasonable and safe number. Jury was waived, trial had to the court, and judgment rendered in favor of the plaintiff in the amount of $600. From this judgment and overruling of the motion for a new trial the defendant appeals.

Plaintiff's amended petition alleged, in substance, that plaintiff was injured while skating on rough, rutty and dangerous ice, where several inches of ice shavings had accumulated, covering the ruts so that they were not visible to his sight; that the defendant was negligent in permitting the rink to become congested by an immense throng of skaters in close proximity to each other, creating a dangerous

condition; that defendant failed to scrape or clean the surface of the ice from the time the rink opened on the night in question until the accident occurred; that defendant should have used, but failed to use, a steam and sprinkler machine to fill up, smooth over and refreeze the ruts in the ice at regular periods on the night of the accident; permitted the ice to become badly cut up and failed to have an adequate number of guards on hand, to limit the skaters to a reasonable number; that the plaintiff, a paid customer, fell face downward, with his hands extended, and a skater behind him skated over plaintiff's left hand, causing severe and permanent injury.

Defendant's answer alleged that the ice skating rink was of modern construction; that the plaintiff fell while making a turn, and the fall was due to his own negligence and lack of skill; further alleged that the injury was not proximately caused by the defendant but by a friend of plaintiff; that the plaintiff entered the rink and in doing so assumed the risks inherent in such sport. The answer contained a general denial, and the reply was a general denial.

The plaintiff and a friend, Donald Yechout, both about 16 years of age, on New Year's Eve, December 31, 1941, proceeded to Ak-Sar-Ben Coliseum in Omaha, to skate. Plaintiff was a good skater, with five or six years' experience, and had skated at the coliseum during its open sessions to the public from about November to March of each year for the past three or four years. He had received for Christmas a new pair of hard-toed hockey skates which he had used once previously. The two boys started to skate shortly after 8 o'clock; the surface of the ice was smooth and in first-class condition. At intervals they took time out for refreshments. During the course of the evening the crowd multiplied until there were 1,200 to 1,500 people skating, as estimated by plaintiff's witnesses, and 300 or 400 spectators. The evidence of the defendant in this respect showed 308 paid admissions and not to exceed 14 or 15 spectators. The number of season-ticket purchasers skating was not given.

During the course of two hours of skating, the skaters cut the ice, causing ruts on the surface over the rink generally. Plaintiff's witnesses testified that the ice shavings, so accumulated, were as deep as six inches, more generally at the edges and at the ends of the rink, and on occasions covered the toes of their skating shoes. The plaintiff at the time of the accident was attempting to negotiate a turn, had it about three-fourths completed, and was skating in a straight line at the time he fell. He testified that when he fell he did not see any ruts for the reason that the surface of the ice was covered with ice shavings, and as he proceeded around the turn and when about eight feet therefrom he fell; his "foot stuck. It hit something. * * * It felt like it went down and sunk into the ice when I fell;" that he extended his hands to break the fall, and his hands went out on the ice. Frank Berigan, a friend, who was skating behind him, skated over his left hand causing injury to the third and fourth fingers. Berigan proceeded to a distance of about six feet and stopped. Yechout was at plaintiff's right two or three feet and proceeded the same distance after plaintiff fell. Plaintiff testified that he did not see anything that his skate caught on because "there were shavings on the ice," and all he knew was that his foot went down and he fell. Yechout testified that he did not go back to examine the place where plaintiff fell, did not see anything in the ice with which plaintiff's foot came in contact and which caused him to fall; that any idea he might have on the subject was from a general inference of the condition of the ice. Berigan testified that right after the accident he saw no ruts or cuts at the place where the plaintiff fell; that the ice shavings had covered up any ruts, and he did not know what caused the plaintiff to fall.

There is further testimony that from 45 minutes to an hour prior to the accident, due to the continuous skating, ice shavings, causing snow to accumulate, made the ice rough, cut it, and the ruts were covered by shavings to such an extent that snowballs could be made out of the accumulated ice shavings. The skating was carried on normally;

the crowd was apparently well-behaved, and there were guards on the ice. There is no evidence that the plaintiff, at the time he fell, was jostled, or that any skater had pushed or touched him. There is evidence of a guard, whose duty it was to keep the ice in condition and to watch the conduct of the skaters. This guard testified, in substance, that there was no occasion to fill in the ruts or cuts, because the condition of the ice was such that it was not required.

At the close of plaintiff's evidence, defendant moved for dismissal of plaintiff's petition, which was overruled.

The manager of the rink testified for defendant to the construction and the method of freezing and caring for the ice. This evidence discloses that the rink was a modern artificial ice rink, with reduced hazards, both of surface and inequalities and underlying water, and that for skating a resilient, nonbrittle ice is desired; that this is a matter of ice temperatures, and ice shavings did not accumulate more than a quarter of an inch; that engineers were kept on the job constantly and made an hourly report.

Plaintiff adduced testimony that ice hockey games are played on this rink, and at the end of each playing period the ice is swept and a steam and sprinkler machine is used to smooth over and freeze the ruts in the ice; that on the night in question, when the skating session had been extended to 12:30 a. m., the defendant had not cared for or prepared the ice in such manner; that after the accident the rink was cleared and the process of rehabilitating the ice for the benefit of the skaters was carried on; that four truck loads of ice shavings were removed from the rink. In ice hockey games, it is true, the snow is removed between quarters, to speed the puck, and it is removed between public skating sessions of about two and a half hours' duration as a necessary preliminary to respraying the ice for the next skating session. The foregoing constitutes the material evidence.

The defendant assigns as error that the district court erred in finding that the accident was the result of negligence on the part of the defendant, rather than risk assumed

by the plaintiff. The plaintiff contends that this assignment of error cannot be argued before this court, for the reason that it was not called to the attention of the trial court in defendant's motion for a new trial; citing *Drainage District v. Dawson County Irrigation Co.*, 140 Neb. 866, 2 N. W. 2d 321, wherein it was held:

"Where a jury is waived in a law action, the case is tried to the court, and the final judgment rests upon findings by the court, in order that errors of law occurring at the trial may be considered by this court, the district court's attention must have been called to them by a motion for a new trial." Other cases holding to the same effect are cited.

An examination of the motion for a new trial discloses that it was in the form required by section 20-1142, Comp. St. 1929. Among the assignments of error are one attacking the sufficiency of the evidence and another that the judgment is contrary to law.

Section 20-1144, Comp. St. 1929, provides in part: "It shall be sufficient, however, in assigning the grounds of the motion to assign the same in the language of the statute and without further or other particularity."

We deem the procedure followed by the defendant in raising the assignments of error, in view of the statute cited, sufficient to permit the presentation of the alleged error to this court.

The most recent case in this state, defining the duty of an operator of a place of public amusement, is *Tite v. Omaha Coliseum Corporation, ante*, p. 22, 12 N. W. 2d 90, wherein we held:

"An operator of a place of public amusement is not an insurer of the safety of his patrons, but he owes them that duty which under the particular circumstances is ordinary and reasonable care for their safety.

"The duty resting on such operator requires him to warn his patrons of any dangers known to him, or which he should know in the exercise of reasonable care, and not known to his patrons, unless such dangers are observable to them in the exercise of reasonable care for their own

safety." Citing on page 3 of the opinion the following authorities; *Shearman and Redfield, Negligence* (Rev. ed.), sec. 779; 2 *Restatement, Torts,* sec. 343; 38 Am. Jur. 754, sec. 96; *Welsh v. Jefferson County Agricultural Society,* 121 Neb. 166, 236 N. W. 331; *Emery v. Midwest Amusement & Realty Co.,* 125 Neb. 54, 248 N. W. 804; *James v. Rhode Island Auditorium, Inc.,* 60 R. I. 405, 199 Atl. 293; *Ivory v. Cincinnati Baseball Club Co.,* 62 Ohio App. 514, 24 N. E. 2d 837; *Danielson v. Reeves,* 211 Minn. 491, 1 N. W. 2d 597; *Hudson v. Kansas City Baseball Club, Inc.,* 349 Mo. 1215, 164 S. W. 2d 318, 142 A. L. R. 858; *Lemoine v. Springfield Hockey Assn., Inc.,* 307 Mass. 102, 29 N. E. 2d 716; *Shanney v. Boston Madison Square Garden Corporation,* 296 Mass. 168, 5 N. E. 2d 1; *Waddel's Admr. v. Brashear,* 257 Ky. 390, 78 S. W. 2d 31, 98 A. L. R. 553.

The plaintiff, participating in the sport of skating on defendant's rink, assumed the ordinary risks of that sport, which includes inequalities of surface, which can reasonably be anticipated.

In the case of *Welo v. Union News Co.,* 263 App. Div. 328, 32 N. Y. Supp. 2d 943, the court, in speaking of the plaintiff as an inexperienced skater, stated: "While plaintiff would possibly have assumed the risk of injury from falling on minor imperfections in the ice, especially when their presence was known to her (*Shields v. Van Kelton Amusement Corporation,* 228 N. Y. 396), she did not assume the risk incidental to a dangerous structural condition in a place where she was an invitee." The *Welo* case shows that even an inexperienced skater assumes the risk of injury by falling on minor imperfections in the ice when their presence is known.

In *Blizzard v. Fitzsimmons,* 193 Miss. 484, 10 So. 2d 343, the court held: "One who participates in diversion afforded by amusement or recreational device 'assumes the risks' of and the dangers that inhere in it so far as they are obvious and necessary."

We conclude that, where an experienced skater participates in skating in a public skating rink, such skater as-

sumes the necessary and obvious risks incidental to the recreation.

The plaintiff, in order to recover, must prove by a preponderance of the evidence negligence on the part of the defendant, as pleaded in his petition. The evidence adduced shows that at the time plaintiff started to skate the surface of the ice was smooth and in first-class condition. He skated for a period of approximately two hours and observed the gradual wearing and cutting of the ice by skates. The ice shavings, alleged to have accumulated, were not dangerous except that they concealed the alleged defects in the ice. None of the plaintiff's witnesses observed any defect in the ice at the place where the plaintiff fell, because the ice was covered with snow. There was an assumption on the part of the plaintiff's witnesses that there were cuts because, for an hour or such a matter, they had observed the ruts being made in the ice by the skaters. The plaintiff did not testify as to what made him fall; nor did he know.

Negligence is the failure to do that which an ordinarily prudent person would do, or the doing of that which an ordinarily prudent person would not do under the same circumstances. To hold that, under the evidence and the circumstances, and the respective duties of the parties in the instant case, plaintiff has proved negligence by a preponderance of the evidence would cause us to travel on guess or conjecture, or to surmise or speculate as to the proximate cause of the plaintiff's injury. Negligence cannot be proved by speculation or conjecture.

We take cognizance of the legal proposition that when a jury is waived and the case is tried to the court the findings of fact by the trial judge shall have the same force and effect as a jury's verdict and will not be set aside, on appeal, unless clearly wrong. We conclude that the judgment of the trial court in the instant case is clearly wrong for the reasons given. The judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.