ERNEST E. WIECK, ADMINISTRATOR OF THE ESTATE OF TRESA I. WIECK, DECEASED, APPELLANT, V. ERNEST BLESSIN, APPELLEE.

85 N. W. 2d 628

Filed October 18, 1957. No. 34213.

*Bruckman & Brock,* for appellant.

*Madgett & Hunter* and *Gross, Welch, Vinardi & Kauff-man,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an action brought in the district court for Adams County by Ernest E. Wieck as administrator of the estate of Tresa I. Wieck, deceased, against Ernest Blessin. The purpose of the action is to recover damages from defendant for the exclusive benefit of the widower and next of kin of the decedent. The right to do so is based on the claim that decedent's death was caused by acts of negligence with which the defendant is chargeable under the family purpose doctrine as it relates to automobiles. Such an action is authorized by sections 30-809 and 30-810, R. R. S. 1943. Defendant pleaded,

among other defenses, that Ernest E. Wieck, driver of the car in which decedent was riding, was guilty of negligence in the operation thereof which caused the accident, the resulting injury, and death of decedent.

Trial was had and after both sides had rested the defendant moved for a directed verdict, which motion the trial court sustained and thereupon dismissed the action. Plaintiff then filed a motion for new trial, which was overruled. This appeal was taken therefrom. In view of the action taken by the trial court we will review the evidence adduced by both sides in accordance with the principles applicable in such situations, that is: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Halliday v. Raymond, 147 Neb. 179, 22 N. W. 2d 614.

Ernest E. Wieck and Tresa I. Bobzine were married on May 15, 1953. No children were born to this marriage. Both worked at the Hastings Navy Ammunition Depot but lived on a farm southeast of Kenesaw, Nebraska. At the time of her death Tresa I. Wieck was 42 and her husband 45 years of age.

Tresa I. Wieck was killed in an automobile accident while riding in a car, a 1949 Tudor Chevrolet, owned and, at the time of the accident, operated by her husband. Decedent left as her sole heirs at law her husband, Ernest E. Wieck; her father, Henry Bobzine; and her mother, Hattie Bobzine. Ernest E. Wieck was appointed administrator of decedent's estate by the county court of Adams County, Nebraska, and, after he had qualified therefor, letters of administration were issued to him by that court on July 20, 1955. He is the duly appointed, qualified, and acting administrator of her

estate. Decedent's father died on October 22, 1955, which was prior to the commencement of this action on December 27, 1955.

The accident in which decedent was killed occurred in the southwest corner of the intersection of two public roads located at the common corner of sections 25, 26, 35, and 36, in Wanda Township, Adams County, Nebraska. The accident happened about 5:15 p.m. on Sunday, December 19, 1954, when a car, a 1951 Fordor Ford owned by appellee and being driven by his son, Harold Blessin, ran into the right side of the car in which decedent was riding with her husband. Just prior to the accident the Wieck car approached the intersection from the north while the Blessin car approached it from the west. After the collision the Wieck car traveled in a southeasterly direction some 75 feet, coming to a stop on its top in a field located southeast of the intersection. The Blessin car traveled east a distance of some 50 feet before coming to a stop on its wheels in the ditch located along the south side of the east-west road east of the intersection. As a result of the collision decedent was thrown from the car in which she was riding and, as already stated, death resulted therefrom.

Both north-south and east-west roads approaching the intersection were 44 feet wide. However, the graveled surfaced portion of the east-west road was 28 feet wide whereas that of the north-south road was 24 feet wide. It was still daylight at the time of the accident and visibility was good. To the northwest of the intersection was a pasture, across which visibility was open, whereas to the northeast was a set of farm buildings with evergreen trees along the fence, the trees coming clear up to the corner, thus making visibility to the east impossible until a car coming from the north had entered the intersection.

The foregoing gives a general picture of the situation involved. We will discuss the evidence more in detail as it relates to the various propositions herein discussed.

Appellee contends that appellant's simple recitation of some of the statutory grounds for a new trial are wholly insufficient as assignments of error to meet the requirements of the statute and our rules relating thereto and therefore present no question for review here. See, § 25-1919, R. R. S. 1943, and our rule of procedure 8a2(4). Appellant's assignments of error are as follows:

"Abuse of discretion by which the plaintiff was prevented from having a fair trial.

"That the said finding, order, judgment and decree of the court is not sustained by sufficient evidence.

"That said finding, order, judgment and decree of the court is contrary to law.

"Error of law occurring at the trial and excepted to by the plaintiff."

It is true that appellant's assignments of error are an almost verbatim repetition of four of the grounds specified by section 25-1142, R. R. S. 1943, as grounds for new trial and are couched in the exact words of appellant's motion for new trial. See subdivisions (1), (6), and (8) of the foregoing statute. Generally we have held that doing so does not meet the requirements of the statute and our rules relating thereto. As stated in Labs v. Farmers State Bank, 135 Neb. 130, 280 N. W. 452: "It has been frequently held by the court that compliance with such requirements is necessary. It is required both by rule of court and statute (section 20-1919, Comp. St. 1929) (now section 25-1919, R. R. S. 1943) that 'The brief of appellant shall set out particularly each error asserted and intended to be urged for the reversal, vacation or modification of the judgment.' See Federal Land Bank v. Elsemann, 121 Neb. 397, 237 N. W. 288. What is termed 'assignment of errors' in the appellant's brief herein is simply and only a copy of the provisions contained in section 20-1142, Comp St. 1929 (now section 25-1142, R. R. S. 1943), reciting the grounds for new trial therein numbered 1, 2, 3, 5, 6 and 8, in the language of the statute.

This, while perhaps sufficient under the provisions of section 20-1144, Comp. St. 1929 (now section 25-1144, R. R. S. 1943), in the motion for new trial, is wholly insufficient as an assignment of errors in this court." See, also, Smallcomb v. Smallcomb, *ante* p. 191, 84 N. W. 2d 217; Romans v. Bowen, 164 Neb. 209, 82 N. W. 2d 13; Federal Land Bank v. Elsemann, 121 Neb. 397, 237 N. W. 288. As stated in Smallcomb v. Smallcomb, *supra:* "The function of assignments of error is that they set out the issues presented on appeal. They serve to advise the appellee of the questions submitted for determination in order that the appellee may know what contentions must be met. They also advise this court of the issues which are submitted for decision."

However, "It is sufficient, in assigning the grounds for a motion for a new trial, to assign the same in the language of the statute and without further or other particularity." McCullough v. Omaha Coliseum Corp., 144 Neb. 92, 12 N. W. 2d 639. See, also, Lund v. Holbrook, 153 Neb. 706, 46 N. W. 2d 130; § 25-1144, R. R. S. 1943.

The purpose of a new trial, which appellant sought to obtain from the trial court, is to enable the trial court to correct errors that have occurred in the conduct of the trial. It is a statutory remedy and can be granted by a court of law if the grounds, or some of them, provided therefor by statute exist. See Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772. The ruling of the court on a motion for new trial is subject to review here. Whether the decision was to grant a new trial, or deny one, the questions on appeal are, do the alleged error or errors appear in the record, were they called to the attention of the trial court by the motion, and do they constitute prejudicial error to the party complaining. An order denying a new trial will be scrutinized here with the same care as one granting a new trial. See Greenberg v. Fireman's Fund Ins. Co., *supra.*

Here, in sustaining appellee's motion for a directed verdict and dismissing appellant's action, and also overruling appellant's motion for a new trial, the trial court gave no reasons for its decisions. If, in a situation such as the instant case, the trial court gives no reasons for its decisions then the party appealing therefrom meets the duty placed upon him when he brings the record here with his assignments of error, the same as in the district court, and submits the record for our examination with the contention there was prejudicial error. Under this construction the appeal presents the question of whether or not the evidence adduced, as it relates to the various principles of law applicable thereto, is sufficient to present a case for the jury. However, appellant's assignments of error are not sufficiently definite so as to raise specific questions of law, such as the trial court's rulings on the admissibility of evidence, for as stated in Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112: "In order that assignments of error as to the admission or rejection of evidence may be considered, the holdings of this court require that appropriate reference be made to the specific evidence against which objection is urged." See, also, Joiner v. Pound, 149 Neb. 321, 31 N. W. 2d 100; Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913. As stated in Minick v. Huff, 41 Neb. 516, 59 N. W. 795: "It is no part of the duty of this court to search a record for the purpose of ascertaining if there is error in it. On the other hand, every reasonable presumption will be indulged in favor of the correctness of * * * any ruling of that court, alleged to be erroneous, must be specifically pointed out to be reviewed here." Thus we do not have before us the question of whether or not certain evidence of Lela Verba, Ernest E. Wieck, Emma Kuehn, and LeRoy Sinsel, relating to statements made by Harold Blessin and LaMonte Borchers after the accident, should have been received either as substantive proof, because admissions of an agent, for the purpose of impeachment only, or

not at all. However, in view of what is hereinafter decided, the question of its admissibility, and for what purpose, becomes immaterial for if admissible the evidence would only relate to the question of whether or not all the evidence adduced is sufficient to create a jury question as to whether or not Harold Blessin was guilty of negligence in the operation of his father's car immediately before the accident and, if so, whether or not it was a proximate cause of the accident in which Tresa I. Wieck met her death.

Harold Blessin testified he approached the intersection at a speed of 50 to 55 miles an hour; that at a distance of some 200 yards from the intersection he lifted his foot from the accelerator because he knew that the intersection was rough; that when about 100 feet from the intersection he looked to the left and saw the Wieck car about 90 feet from the intersection; that he immediately applied his brakes but could not stop his car because his tires skidded on the gravel; that he entered the intersection going about 35 miles an hour; and that the front of the car he was driving hit the right side of the Wieck car about center between the wheels. LaMonte Borchers, who was riding with Harold, testified to about the same facts except that he said Harold "slacked off" to about 40 to 45 miles an hour and that he saw the Wieck car about 100 feet from the intersection. Both testified the cars entered the intersection at about the same time.

As to the duty of the driver of a car we have said:

"A driver of an automobile should have his car under such reasonable control as will enable him to avoid collision with other vehicles, assuming that the drivers thereof will exercise due care." Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578.

"Reasonable control by drivers of motor vehicles is such as will enable them to avoid collision with other vehicles operated without negligence in streets or intersections, and with pedestrians in the exercise of due

care." Pongruber v. Patrick, *supra.* See, also, Bear v. Auguy, 164 Neb. 756, 83 N. W. 2d 559.

"The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way or is driving on the side of the highway where he has a lawful right to be. He must keep a lookout ahead or in the direction of travel or in the direction from which others may be expected to approach and is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance." Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250.

"A vehicle which has entered an intersection and is passing through it at a lawful speed has the right-of-way over a vehicle approaching the intersection from a different direction into its path." Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496.

"One having the right-of-way may not on that account proceed with disregard of the surrounding circumstances. He has the right-of-way over traffic approaching on his left, but he is not thereby relieved from the duty of exercising ordinary care to avoid accidents." Long v. Whalen, *supra.* See, also, Burhoop v. Brackhan, 164 Neb. 382, 82 N. W. 2d 557.

We think the factual situation here is comparable with that of the defendant in Burhoop v. Brackhan, *supra.* Therein we stated: "Under the facts disclosed by the record we think that reasonable minds could differ as to whether or not he was negligent and, if so, whether or not such negligence was a proximate cause of the accident. In view thereof both are issues for the jury and the trial court was correct in submitting them." Consequently we find the conduct of Harold Blessin in driving his father's car in the manner that the evidence adduced shows he did presents a question of fact for a jury as to whether or not he was negligent in doing so

and, if so, whether or not it was a proximate cause of the accident.

Appellant seeks to hold appellee liable under the family purpose doctrine. This doctrine is set forth in Linch v. Dobson, 108 Neb. 632, 188 N. W. 227, as follows: "Where the car is kept for the use and pleasure of the family, and one member of the family is using it for his individual pleasure, or for one of the family purposes for which it is kept, it comes strictly within the reason of the rule that, in such use, the member of the family is acting as the agent, in furthering the purposes of the owner, as truly as though other members of the family were in the car with him, and that the owner can be held responsible for damages resulting from the negligent operation of the car while so used."

And in Stevens v. Luther, 105 Neb. 184, 180 N. W. 87, we said: "* * * the owner of an automobile kept for family purposes is liable for injuries inflicted upon a stranger as a result of the negligent driving of one of his children, where the car is occupied by members of the family and is being used for one of the purposes for which it is kept."

The record shows that the car being driven by Harold Blessin was owned by appellee, purchased by him for the purpose of the family's pleasure, and was generally so used. Harold was born on April 19, 1933, and grew up in his parent's home on the farm and was there as a member of the family until October 8, 1951, when he enlisted in the regular army for a period of 3 years. After he was old enough to do so Harold drove the family car with his father's knowledge and consent, doing so both before he entered the army and whenever he returned home while on furlough. After his discharge from the army on October 8, 1954, Harold returned to the family home and lived there until after December 19, 1954. He became 21 years of age on April 19, 1954, while still in the army. After his return to the home Harold lived there in the same relationship to the family as before,

including the use of the family car, except that his father paid him $100 for picking corn, which extended over a period of about 3 weeks; that he occasionally did odd jobs for neighbors; and that he received $300 mustering-out pay from the army, which mustering-out pay he received in three equal installments of $100 each in November and December of 1954 and January of 1955. On the occasion of the accident he was taking LaMonte Borchers, with whom he had been hunting, to LaMonte's home and was using appellee's car with the latter's knowledge and consent.

We do not think the fact that Harold had become of age is necessarily controlling. See, Linch v. Dobson, *supra;* Stevens v. Luther, *supra.* As stated in Linch v. Dobson, *supra:* "It further appears that Paul was 22 years of age. He was, however, living at home as a member of the family and under parental control. In this case, the father's control over the son and the privilege of the son to the use of the car were, in no particular, different than had the son been a minor." Nor is the fact that the father paid the son for picking corn necessarily controlling. See American Products Co. v. Villwock, 7 Wash. 2d 246, 109 P. 2d 570, 132 A. L. R. 1010. As therein stated: "* * * the fact that the father paid the son wages had no further significance." In Lund v. Holbrook, *supra,* where we held the question of liability under the family purpose doctrine was an issue for the jury, the evidence of the son disclosed the following: "On cross-examination of the son, he testified that he was 22 years of age at the time of the accident; that he lived at home with his father; that he was working for his father at the time of the accident; and that he had driven the car whenever he wanted to ever since his father purchased it." We think the situation here is no different and the evidence on this issue presents a question for a jury.

We come then to the question, for whom can the appellant as administrator maintain this action? Section

30-810, R. R. S. 1943, provides, insofar as this question is involved, that: "It shall be brought by and in the name of his personal representatives, for the exclusive benefit of the widow or widower and next of kin. The verdict or judgment should be for the amount of damages which the persons in whose behalf the action is brought have sustained. The avails thereof shall be paid to and distributed among the widow or widower and next of kin in the proportion that the pecuniary loss suffered by each bears to the total pecuniary loss suffered by all such persons." It is thus apparent that appellant could bring an action to recover for the benefit of the widower and next of kin, the latter in this case being the decedent's father and mother. The statute goes on to limit the right of those in whose behalf recovery is sought to "the amount of damages which * * * (they) have sustained."

As stated in Tate v. Barry, 144 Neb. 517, 13 N. W. 2d 879: "* * * in an action by the legal representative of a deceased brought in behalf of the widow or widower and next of kin, the trial court should submit to the jury the question of the amount of the pecuniary loss, if any, which the evidence, with reasonable certainty, shows they have suffered." See, also, In re Estate of Lucht, 139 Neb. 139, 296 N. W. 749; Tucker v. Draper, 62 Neb. 66, 86 N. W. 917, 54 L. R. A. 321; Fisher v. Trester, 119 Neb. 529, 229 N. W. 901. As stated in Fisher v. Trester, *supra:* "* * * the measure of damage is the present worth in money of the contributions having a monetary value of which the preponderance of the evidence shows with reasonable certainty the next of kin have been deprived by the act of the defendant that creates the liability. That which is only probable, estimated or conjectural may not be considered in determining the pecuniary loss."

Being an adult daughter, the decedent's duty to support her parents was limited to that imposed by sections 68-101, R. S. Supp., 1955, and 68-102, R. R. S. 1943.

See Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767. As stated in Spomer v. Allied Electric & Fixture Co., *supra:* "The legal liability of an adult son (here daughter) to support his parents does not extend beyond the terms of the statute." And, as stated in Greenwood v. King, 82 Neb. 17, 116 N. W. 1128: "A clear distinction is made by the authorities between an action instituted for the benefit of the widow and the next of kin upon whom the law confers the right to be supported by the person killed, and those next of kin to whom the law does not necessarily give such right to support."

The evidence shows the Wiecks lived in a home on a farm and rented some of the land adjacent thereto whereon they raised a garden and kept chickens, cows, and hogs. Decedent not only had a substantial income from her work outside of the home but also rendered valuable service in the home. The evidence shows that she worked about 4 hours every day in taking care of the home, a garden, and in helping do the chores in connection with their livestock. However, all of her income and services were used in connection with their home and there is no evidence that she ever actually helped her parents in any way, that is, by either helping them financially or rendering them any service. There is also no evidence to show that the parents were, at the time of decedent's death, or that the mother is now or ever will be in the class to which section 68-101, R. S. Supp., 1955, has application. Thus the only person within the class for which an action may be brought, who the evidence adduced shows has sustained damages because of decedent's death, is her husband, who was driving the car at the time the accident happened. We think the possibility of the mother ever becoming a pauper is so remote and uncertain that it cannot be considered as a proper basis upon which to permit a jury to award her any recovery of damages. See In re Estate of Lucht, *supra.*

The question then arises, since the surviving husband is the only one for whom recovery can be had, was he guilty of contributory negligence, as a matter of law, sufficient to defeat his recovery?

We said in Ecker v. Union P. R. R. Co., 164 Neb. 744, 83 N. W. 2d 551: "In an action by plaintiff for his own benefit to recover for pecuniary injury which he has suffered by reason of the death of his wife, wherein the evidence discloses that plaintiff was guilty of negligence more than slight as a matter of law which proximately contributed to or caused the accident and death, it is the duty of the court to direct a verdict for defendant." See, also, Tucker v. Draper, *supra;* Jones v. Union P. R. R. Co., on rehearing, 141 Neb. 121, 4 N. W. 2d 875.

The evidence shows that as the husband was driving his car south toward the intersection he had a clear view of the east-west road west of the intersection for at least 100 yards; that when about 40 yards (120 feet) north of the intersection he looked to his right (or west) but saw no cars within that 100 yard distance; that he then directed his attention to and looked to his left (or east) where the view of the east-west road east of the intersection was obstructed until he had entered the intersection; that he did not again look to the right (or west) until he heard a noise; that just as he looked the Blessin car hit his car; and that the collision occurred in the southwest corner of the intersection just as the front end of his car was leaving it.

We said in Evans v. Messick, 158 Neb. 485, 63 N. W. 2d 491, that: "The failure of the driver of an automobile, upon approaching an intersection, to look in the direction from which another automobile is approaching, where, by looking, he could see and avoid the collision that resulted, is more than slight negligence, as a matter of law, and defeats recovery." See, also, Wendel v. Carlson, 162 Neb. 742, 77 N. W. 2d 212; Miller v. Aitken, 160 Neb. 97, 69 N. W. 2d 290; Nelson v. Plautz, 130 Neb. 641, 265 N. W. 885.

Here appellant admits he could see a car on the east-west road west of the intersection for a distance of at least 100 yards and that, at the speed he was traveling, he was positive he could stop his car within 20 feet but admits he never, from a distance of 120 feet north of the intersection, looked to see if any cars were coming from the west until just at the moment his car was hit. Under our holdings he was guilty of contributory negligence sufficient to defeat any right of recovery which he might otherwise have had.

In view of what we have said and held herein we affirm the trial court's action of dismissing appellant's action and denying him a new trial.

AFFIRMED.