NANCY THOMAS, APPELLANT, V. CECIL OWENS, APPELLEE.
99 N. W. 2d 605

Filed December 4, 1959. No. 34635.

*Martin A. Cannon,* for appellant.

*Story, Pilcher & Howard,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for damages for personal injuries by Nancy Thomas, plaintiff and appellant, against Cecil Owens, defendant and appellee. The case was tried and at the conclusion of the evidence a motion was made by the defendant in the alternative for a directed verdict in his favor or for dismissal of the action. The motion for dismissal was sustained by the order of the court. A motion for new trial was duly filed. This motion

was overruled. From the orders dismissing the action and overruling the motion for new trial the plaintiff has appealed.

The action is based on an accidental collision between an automobile operated on a highway or highways in Omaha, Douglas County, Nebraska, by the plaintiff, and one owned and operated by the defendant.

On its face the order on the motion for dismissal was rendered either on the ground that the evidence disclosed that the plaintiff was, as a matter of law, guilty of acts which proximately caused the accident and her claimed injury and damage, or that she was guilty of contributory negligence which proximately contributed to the accident in a degree which likewise as a matter of law would defeat a right of recovery. Obviously from an examination of the bill of exceptions it was sustained on the latter of the two grounds, since it may not well be said as a matter of law that the defendant was free from negligence in the premises. The consideration of the case herein will be thus limited.

The brief of appellant contains as ground for reversal but one assignment of error. It is: "The trial court erred in sustaining defendant's motion and in refusing to submit the case to a jury for determination."

The determination of this question must be made in the light of the following rules: "A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107. See, also, Kepler v. Chicago, St. P., M. & O. Ry. Co., 111 Neb. 273, 196 N. W. 161; Morse v. Gray, 166 Neb. 557, 89 N. W. 2d 842.

"In every case, before the evidence is submitted to

the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Krichau v. Chicago, B. & Q. R. R. Co., 150 Neb. 498, 34 N. W. 2d 899. See, also, Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758; Morse v. Gray, *supra.*

"Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination." Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144. See, also, McIntosh v. Union P. R. R. Co., 146 Neb. 844, 22 N. W. 2d 179; Allen v. Kavanaugh, 160 Neb. 645, 71 N. W. 2d 119.

The collision which is the basis of this action took place in the early afternoon on May 20, 1957, somewhere in the southeast quadrant of what is known as the intersection of Seventy-second and Dodge Streets in Omaha, Nebraska. Dodge Street extends east and west and is a main highway passing through the city. It has three direct traffic lanes leading westward into the intersection and two on westward out of it. It has three direct lanes leading into the intersection from the west and two leading out to the east. There is a narrow island within and to the south edge of the center lane of Dodge Street to the east of the intersection and a like island within and to the north edge of the same lane west of the intersection. Seventy-second Street extends north and south through the intersection. From the north, two lanes lead into the intersection. Neither of these is obstructed. Two lanes lead out to the north. However, located in the inner of the two lanes and commencing a short distance to the north is an island the width of the lane and extending northward. From the south two lanes enter and two leave the intersection. Between the two inner lanes is an island which at its north end

is about the same width as a regular lane. It starts about 24 feet back from the intersection and extends southward about 300 feet. It becomes gradually narrower as it extends southward. At each corner of the intersection is an island. Each fits into the corner outside the outer lines of the outside driving lanes going in opposite directions. Outside of these islands are right-turn lanes which after passing the islands parallel the outside driving lanes. All lanes are 12 feet in width. An automobile coming from the north on Seventy-second Street to turn east into Dodge Street from the inner southbound lane on Seventy-second Street would in passage have to cross the three westbound lanes on Dodge Street and the two northbound lanes of Seventy-second Street. About all of this there can be no dispute since it is taken from a plat in evidence, the correctness of which has been stipulated.

The plaintiff testified in substance, which testimony with its reasonable inferences must for the purposes of this case be accepted as true, that she was operating a Buick automobile in a southerly direction on Seventy-second Street and as she approached the intersection of Dodge Street she slowed down almost to a stop and then moved into the intersection at a speed of about 5 miles an hour; that as she approached she saw another automobile waiting next to the island in the inside northbound lane to make a left turn into Dodge Street; that she was in the turning lane, meaning obviously the inner lane as it appears on the exhibit which has been mentioned; that the traffic lights were green; that while in this situation her view to the south was partially blocked; that she drove into the intersection, going south, and as she did so she looked to the south, where she could see approximately to the middle between the two middle posts on the island to the south which we interpret from the record to be somewhere between 175 feet and 220 feet away; that at that time she saw no car coming from the south; that at that time she started at

about the middle of the street, obviously Dodge Street, to turn east into Dodge Street and the automobile on the opposite side of Dodge Street started to turn west into Dodge Street; that the other automobile passed to the south and while the two were passing she had no view to the south; that during all of this time she was operating her automobile at about 5 miles an hour; that when she and the other driver started to make their turns into Dodge Street she looked east up Dodge Street, and did not thereafter look to the south until the left front of her automobile was about on a line between the islands at the northeast and southeast corners of the intersection at which time she observed the automobile of the defendant in the outer driving lane at the north end of the island to the south in Seventy-second Street, which was a distance of 20 to 25 feet south of the intersection; that when she saw the defendant's automobile she increased the speed of her own; and that the right front corner of her automobile and the front end of the defendant's automobile came into collision.

There is no question but that the defendant came from the south and that the two automobiles came together in the eastern northbound lane of Seventy-second Street in the intersection and quite probably the northern eastbound lane of Dodge Street. The record discloses that the speed of defendant's automobile was variously estimated at from 30 to 50 miles an hour. There is no question that the view to the south was open and unobstructed from the time her view was cleared by the passage of the automobile which turned west into Dodge Street. A witness for the plaintiff gave testimony the effect of which was to say that there was a clear view 789 feet south from the center of Dodge Street.

As has been said, at the time of this passage she was proceeding at about 5 miles an hour. She could not have been far into the inner lane when her view was no longer obstructed. It is pointed out here that the evidence on behalf of plaintiff disclosed that an automobile

moving at the rate of 35 miles an hour would move 53 feet in a second, and at the rate of 50 miles an hour it would move 75 feet in a second. Thus it becomes apparent that when the plaintiff looked to the south first after her view was no longer obstructed the automobile was one second or less of driving time away.

Under the evidence viewed most favorably to the plaintiff she had the right-of-way under the ordinances of the City of Omaha and the controlling statutes. The evidence indicates she was in the intersection first and that she indicated her intention to turn and was turning before the defendant reached it. The maximum legal speed on Seventy-second Street, as provided by section 55-7.5 of the Municipal Code of Omaha, is 35 miles an hour. Section 39-751, R. R. S. 1943, provides that the driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might have had under the statute. There was evidence that the defendant was not traveling in excess of 35 miles an hour but evidence most favorable to the plaintiff indicated that he was.

Notwithstanding this, certain duties and obligations devolved upon the plaintiff which require examination in the ascertainment of whether or not the case should have been submitted to a jury. These duties find their definition and exposition in the following statements of principle and those already set out herein:

"The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way or is driving on the side of the highway where he has a lawful right to be. He must keep a lookout ahead or in the direction of travel or in the direction from which others may be expected to approach and is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance." Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250. See, also,

Wieck v. Blessin, 165 Neb. 282, 85 N. W. 2d 628.

"The failure of the driver of an automobile, upon approaching an intersection, to look in the direction from which another automobile is approaching, where, by looking, he could see and avoid the collision that resulted, is more than slight negligence, as a matter of law, and defeats recovery." Evans v. Messick, 158 Neb. 485, 63 N. W. 2d 491. See, also, Nelson v. Plautz, 130 Neb. 641, 265 N. W. 885; Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569; Wieck v. Blessin, *supra.*

"When one, being in a place of safety, sees or could have seen the approach of a moving vehicle in close proximity to him and suddenly moves from the place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence more than slight in degree, as a matter of law, and precludes recovery." Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790. See, also, Troup v. Porter, 126 Neb. 93, 252 N. W. 611; Gade v. Carlson, 154 Neb. 710, 48 N. W. 2d 727; Ring v. Duey, 162 Neb. 423, 76 N. W. 2d 433; Farag v. Weldon, 163 Neb. 544, 80 N. W. 2d 568.

"The duty of the driver of a vehicle to look for vehicles approaching on the highway implies the duty to see what is in plain sight." Kraft v. Wert, 150 Neb. 719, 35 N. W. 2d 786. See, also, Vandervert v. Robey, 118 Neb. 395, 225 N. W. 36; Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673.

"Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence." Cuevas v. Yellow Cab & Baggage Co., *supra.* See, also, Klement v. Lindell, 139 Neb. 540, 298 N. W. 137; Corbitt v. Omaha Transit Co., *supra.*

These principles and the pertinent facts which have been summarized lead to the inescapable conclusion that the plaintiff did not, in the exercise of ordinary care, do those things which she should have done in the interest of her own safety and which if she had done would have

caused avoidance of the collision. Further she did things which, in the exercise of ordinary care, she should have avoided, which if she had avoided doing, would have prevented the collision. Particularly stated, she turned with her view to the south obstructed going at the speed of about 5 miles an hour to cross on a curved line an area about 24 feet in width straight across, and never looked again until she was practically across the area when a danger, which could have been seen at any time after her view was no longer blocked by the automobile which had been across Dodge Street to the south, was no more than a second of time away. Instead of stopping, as in the exercise of ordinary care she should and could have done, and without looking she moved into the path of defendant's automobile.

These acts and failure to act amounted to contributory negligence of a character and degree which as a matter of law defeat any right of recovery of damages in this case. Accordingly the trial court did not err when it sustained the motion to dismiss.

The judgment of the district court is affirmed.

AFFIRMED.