JONAS LILEIKIS, APPELLANT, v. VALANTINAS KUDIRKA, APPELLEE.

145 N. W. 2d 441

Filed October 7, 1966. No. 36243.

Sodoro & Meares, for appellant.

Matthews, Kelley & Cannon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and NEWTON, District Judge.

BROWER, J.

This is an action for personal injuries sustained by the plaintiff and appellant, Jonas Lileikis, a pedestrian who was injured in a collision with a four-door hardtop 1961 Mercury Monterey driven by the defendant and appellee, Valantinas Kudirka. At a trial before a jury, at the conclusion of the plaintiff's evidence, the court

sustained defendant's motion for a directed verdict or in the alternative a dismissal of plaintiff's case. A motion for a new trial being overruled, the plaintiff brings the case to this court by appeal.

The accident happened on Sunday, June 24, 1962, at 5:30 p.m., on U. S. Highway No. 73-75 in a rural area south of Omaha, Nebraska, at what is commonly called the LaPlatte Crossing. It was a bright, clear, dry summer day.

At the place of the collision, U. S. Highway No. 73-75 extends in a north and south direction. It is a paved four-lane divided highway with two lanes for traveling to the north and two to the south. A short distance north of where the accident occurred the highway is intersected by another road which has a graveled surface to the west of the highway and a crushed rock surface on its east. The graveled road also extends north and south parallel to the highway on its west. A grassy median is to the west of the southbound portion of the highway, separating it from the graveled road. A similar grassy median lies between the northbound and southbound lanes of U. S. Highway No. 73-75. Both medians are cut by two concrete "crossovers" which are in turn separated by a similar median in line with that separating the southbound and northbound lanes of the highway. From an aerial photograph, exhibit 1, the median separating the two crossovers appears to be somewhat longer from north to south than the width of the highway from curb to curb. The north crossover is immediately to the west of the intersecting crushed rock road to its east. There is no intersecting road to the immediate east of the south crossover. Although the south crossover is paved, it is not a part of the main-traveled north or south route of the highway, but is a place where cars or pedestrians may cross over the median strip into and out of the side roads pictured in the area.

About 1:30 or 2 p.m., on June 24, 1962, the plaintiff

and his wife had accompanied his daughter, Ruth Baesler, her husband, and their child at an outing at Holman's Beach south of the city of Omaha. The daughter and husband went swimming, but plaintiff and his wife did not go into the water. Later in the afternoon the plaintiff went to the car where his wife sat and asked her when they were going home. On her replying she did not know, he stated he was going to walk back, although it was a distance of 15 miles.

When the rest of the family arrived back at their home in Omaha, the plaintiff was not there. A neighbor, Jonas Starkevicius, on request drove Mrs. Baesler back over the road to Holman's Beach, looking for the plaintiff. About a block away from the scene of the accident Mrs. Baesler saw her father walking northward toward Omaha on the grassy median on the west side of U. S. Highway No. 73-75 which separates it from the graveled road. He was then approximately west of the south end of the south crossover. The car in which Mrs. Baesler traveled was then proceeding southward on the outside southbound lane of the highway.

Mrs. Baesler testified she saw her father, the plaintiff, turn eastward and walk across both of the southbound lanes of traffic into the south crossover. On the plaintiff walking eastward, Mr. Starkevicius turned his vehicle into his left lane preparatory to picking up the plaintiff. As Starkevicius and Mrs. Baesler approached in the car from the north, plaintiff continued walking eastward on the south crossover to its east edge. There he moved out of the crossover area, still walking normally, into the inside northbound lane in which defendant's Mercury was approaching from the south. On taking three or four steps plaintiff came in collision with the left door handle of the defendant's Mercury when plaintiff was halfway into the lane closest to the crossover or island. Plaintiff was thrown in the air but the witness did not know in what direction. She did not know where her father was looking or how he was

faced. She did not see the defendant's car or other cars until immediately before the accident. While with her disabled father, the defendant stated in the Lithuanian language, which they both spoke, that when "he saw him it was too late to stop."

A witness, who was a state patrolman at the time, came to the scene after the accident in answer to a call. He described the highways and roads as previously related. He stated the impact was between the left front door handle of the car and plaintiff's person at a point where the automobile swerved to the right. Photographs of defendant's automobile seem to clearly show this. There was a long sweeping curve across the two northbound lanes of traffic extended to the ditch on the east side of U. S. Highway No. 73-75 where defendant's car came to rest. It was marked by "abrasions" which are laid down by tires when a car travels sideways. The patrolman distinguished such abrasions from skid marks resulting from an application of the brakes. The abrasions began in the west northbound lane approximately east of the center of the south crossover. A red dot was placed on the aerial photograph, exhibit 1, by the officer, apparently in the center of the inside northbound lane. He testified this was the point of impact, which he determined in part however from conversation with the defendant.

Jonas Starkevicius testified. His evidence substantially agrees with that of Mrs. Baesler with respect to the movements of her father seen by him. He was driving 50 or 60 miles per hour when he first saw plaintiff. He pulled into the east southbound lane, intending to pick up the plaintiff in the south crossover. He saw defendant's automobile approaching when it was 200 feet away from the place of accident. Defendant's vehicle was going north on the west northbound lane immediately prior to the accident. There were no other vehicles between this car and the plaintiff and no cars to its right, but there were a few cars farther south be-

hind the defendant's car. He did not give any testimony concerning the speed of the defendant's vehicle. When defendant's car was 200 feet away, plaintiff was right at the edge of the west northbound lane. After stepping over a line marking the joint between the crossover and the highway, he took two or three steps when he immediately came in contact with the car.

Defendant produced no evidence on his own behalf, but plaintiff introduced certain of defendant's testimony taken by deposition by way of admissions and other portions of the deposition were admitted on cross-examination by way of explanation. In the excerpts received, defendant stated he saw the plaintiff walking eastward when his car was approximately a block away, maybe a block and a half. His car was traveling in the left-hand lane northbound. It was then going 50, or perhaps 55 miles per hour. When within ½ block of the plaintiff the defendant slowed his car to between 40 and 45 miles per hour. Plaintiff was then near the edge of the crossover. Defendant looked in his mirror and cars were four or five car-lengths back of him. He then spoke to his nephew riding beside him. Defendant asked, " 'Do you see that guy walking?' and he said, 'Yes', and I said, 'Is he drunk or something?' and he said, 'I don't know.' " Plaintiff was still on the concrete between the two highways when defendant's car was 50 feet away, but farther "up here by the edge." The car was then still going 40 or 45 miles per hour. As plaintiff got close it appeared he sort of stopped and seemed to look down but his head was down and defendant was not sure whether plaintiff looked at him. Defendant did not blow the horn on approaching, nor apply his brakes. Defendant was keeping his eyes on the road and going straight ahead. When within 15 feet of him the plaintiff "took off." Defendant cut right and plaintiff "jumped" or "bumped" into his door, hitting the left front door.

The plaintiff was unconscious after the accident and remembers nothing after walking across the southbound

lanes of the highway and into the crossover. The evidence clearly shows the plaintiff was not intoxicated and, although 67 years of age at the time of the accident, was in good health and in no way disabled.

Plaintiff contends the defendant was negligent in failing to keep a proper lookout or having his car under reasonable control; in failing to give warning of his approach; in traveling at an excessive rate of speed under the existing circumstances; and in failing to apply the brakes or change the course of his vehicle to avoid striking the plaintiff.

The trial court did not consider the plaintiff's contentions with respect to the defendant's negligence. It held the plaintiff was guilty of contributory negligence more than slight in degree as a matter of law and for that reason sustained the motion for a directed verdict for the defendant. The plaintiff assigns error to this ruling and contends it is contrary to the law and the evidence.

We cannot sustain the assignments. We conclude, as did the trial court, that it is not necessary to consider the defendant's negligence.

The south crossover in which the plaintiff walked not only was intended as a means for vehicles to change their course and enter another roadway, but was a place of safety in which vehicles could wait while traffic on the highway itself cleared. We think, with respect to the highway, it offered the same facility to a pedestrian. The plaintiff was in this place of safety. He left it and on taking at the most three or four steps collided with the left side of a car at the front door handle. There is no evidence to the contrary. The car was approaching at 40 to 45 miles per hour until it swerved close to him. This, too, is uncontradicted. The highway was in a rural area. The plaintiff stepped from a place of safety into the side of an oncoming car being driven at a lawful but rapid speed. The evidence is not entirely in harmony as to whether the plaintiff looked or whether he stepped out without looking. It was his duty to look and

if he did not he was negligent. If he proceeded without looking he was equally negligent.

This court has hitherto held: "When one, being in a place of safety, sees or could have seen the approach of a moving vehicle in close proximity to him and suddenly moves from the place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence more than slight in degree, as a matter of law, and precludes recovery." Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790. See, also, Farag v. Weldon, 163 Neb. 544, 80 N. W. 2d 568; Thomas v. Owens, 169 Neb. 369, 99 N. W. 2d 605.

Plaintiff cites cases where pedestrians were walking on the main portion of a highway or where there was evidence that they were upon the highway itself for some purpose. He abstracts rules from these decisions which he contends are contrary to that which we have stated and deem controlling in the present situation. The cases cited and the rules taken therefrom have no application to the facts disclosed by the evidence before us. The extension of this opinion to discuss them would serve no purpose.

It follows that the judgment of the trial court should be and is affirmed.

AFFIRMED.