GERTRUDE GOERES, ADMINISTRATRIX, APPELLEE, V. RAY GOERES, APPELLANT.

FILED APRIL 14, 1933. No. 28519.

*Ziegler & Dunn* and *E. D. Beech,* for appellant.

*Chambers & Holland* and *Deutsch & Stevens, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an action under the "Lord Campbell's Act" by an administratrix to recover damages for the death of her husband. The first issue was that, as the plaintiff was not the real party in interest, she did not have the right to bring the action. The trial court held that she had that right, and the jury returned a verdict for $5,000.

The fire whistle blew at about 6:30 p. m. on July 17, 1931, in the town of Osmond, Nebraska, and two brothers, who were volunteer members of the fire department, started for the fire, each going in his own car. They went in different directions, and shortly thereafter collided at right angles in the middle of a street intersection, which collision resulted in the death of one of these brothers, Nicholas Goeres, aged 33 years. The defendant, Ray Goeres, admitted he was driving his model A Ford at 35 to 40 miles an hour at the time. He testified that his brother (meaning the deceased) was driving his model T Ford fast, probably 35 miles an hour. The village of Osmond carried insurance on its employees, and the widow is being paid $15 a week compensation by the insurance carrier.

After the death of her husband, a written contract was entered into between the widow, who was afterwards appointed administratrix of his estate, and the General Indemnity Corporation of America, which is paying the compensation for 350 weeks, and the city of Osmond, which in specific terms provided that the widow, as administratrix, should begin this suit, and, for so doing, the others agreed to pay her 10 per cent. of whatever amount

should be recovered in the suit. They also agreed, probably at her request, that, as Ray Goeres was her brother-in-law, and only carried indemnity insurance on his automobile for liability up to $5,000, the judgment that they recovered against him should not exceed the sum of $5,000. This written contract was set out in full in the answer.

One of the questions raised is whether or not Mrs. Goeres, the widow of the deceased, as administratrix, was the real party in interest. She contracted that none of the proceeds of the judgment, if one should be obtained, would go to her except the mere sum of 10 per cent., and the city of Osmond and the General Indemnity Corporation of America should receive all the rest of the judgment. The question is raised here that, while it is true that the workmen's compensation law does not prevent the widow from bringing suit, it is contended by appellant that a contract of this kind is not proper practice in Nebraska. Upon motion of the plaintiff, this written contract was stricken out of the defendant's answer, and this is one of the errors charged.

Appellant insists that this violates section 20-301, Comp. St. 1929, which provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section twenty-six."

In *O'Donnell v. Baker Ice Machine Co.*, 114 Neb. 9, it is held that the employee must plead and prove the employer's neglect or refusal to sue the third party, in order for the employee to maintain such an action, and the statute then in force, being section 3041, Comp. St. 1922, was later amended to avoid this ruling, and is now found as section 48-118, Comp. St. 1929, being a part of the workmen's compensation law, and provides generally that reimbursement from a third person, whose negligence caused the death of the employee, for the full amount of compensation paid by employer to employee's dependent, together with the expenses thereof, is the measure of the

employer's statutory right of subrogation. Comp. St. 1929, sec. 48-118; *Bronder v. Otis Elevator Co.,* 121 Neb. 581.

It is said that only a few other states, among which are Alabama, Minnesota and Wisconsin, have statutes similar to this section 48-118, Comp. St. 1929, providing specifically for subrogation of the employer to the right of the employee to the amount of compensation payable or to be paid.

These subrogation statutes, in whatever form they appear, doubtless came from a provision of the English act, 6 Edw. VII, ch. 58, sec. 6, which subrogates the employer to the injured employee's right of action against a negligent third party.

Several of the various types of statutes in relation to this matter might be set out briefly as follows: (1) Statutes which require the employee at his option to take compensation or to sue the tort-feasor; (2) those providing that the employee shall receive any amount recovered by the employer in excess of the compensation allowed; (3) statutes which limit the employer's recovery to the amount for which he is held under the compensation law; (4) statutes allowing the employee to proceed against either the employer or the tort-feasor, but not against both; (5) statutes which allow the employee to recover compensation from the employer and also to sue the tort-feasor, but, in case his recovery from the tort-feasor is greater than the amount paid in compensation, the employer is subrogated to that extent, which is the rule in Nebraska. The rights of the employee or his personal representative are not two separate remedies for the same wrong, for the right against the tort-feasor is a common-law remedy calculated to give damages for an injury caused by a wrong-doer. The right for compensation against the employer who is guilty of no wrong is not intended to make whole the injury to the employee, for compensation depends upon the fact that one was injured while in employment, and is measured, not by the extent of the injury suffered, but by the amount of the employee's weekly wages.

When the accident occurs, the employee is sometimes forced by financial circumstances to take immediate compensation, and this does not, under the Nebraska law, deprive him, because of this necessity, of recovering from the tort-feasor his larger common-law liability. See 40 Yale Law Journal, 1108; 26 Harvard Law Review, 377; 10 Neb. Law Bulletin, 489; Ann. 67 A. L. R. 249.

The action in the case at bar is founded upon Lord Campbell's Act of 1846, 9-10 Vict. ch. 93, which is the model of nearly all American legislation upon this subject. Cooley, Torts (4th ed.) sec. 211. It was first enacted in our Nebraska law in sections 1 and 2, ch. 15, General Statutes of Nebraska 1873, and now appears as sections 30-809, 30-810, Comp. St. 1929.

The question raised has been before this court several times in various forms. It has been held that the workmen's compensation law does not create a cause of action against a wrong-doer for negligently causing the death of another person, and that an action against a wrongdoer for causing such death must be brought in the name of the personal representative. *Luckey v. Union P. R. Co.,* 117 Neb. 85.

In the case at bar, the law of Nebraska required this action to be brought by the administratrix under the Lord Campbell's Act, while the provisions of the compensation act, relating to the interest of the employer therein, merely related to the distribution of the proceeds. The ruling of the trial court that she had a right to bring the action was correct.

We will next consider the question whether the court erred in sustaining plaintiff's objection to the defendant's question, on the cross-examination of Mrs. Gertrude Goeres, pertaining to a written contract with the General Indemnity Corporation of America, relative to bringing this action.

This contract was set out at length in the answer, and then stricken out on motion before trial. The appellant insists that if he could have shown the jury that she was

to receive but 10 per cent. of the verdict, it might have changed that verdict materially. We do not think so, for the contract was nothing more than a recitation of the statutory rights of the parties.

The bill of exceptions discloses the following examination: "Now, Mrs. Goeres, have you been paid any money since the time of your husband's death on account of that accident? A. Yes. Q. Who pays it? A. Well, the workmen's compensation. I get a check from Lincoln. Q. You get a check from there every week? A. About every two weeks. Q. How much are those checks for? A. I get a check usually for $30. I get $15 a week." And in regard to the fact of the attorneys representing her: "Q. Now, did you hire Mr. Holland and Mr. Deutsch to bring this action, or did somebody else? A. I did. Q. And do you know who is paying them? A. No; I don't. * * * Q. You haven't agreed to, have you? A. No; I haven't." Statement by Mr. Deutsch: "I think the jury recognizes that Holland and I represent the compensation company and we also represent her." "Q. For the purpose of the record I will ask you whether or not you had a written contract with the General Indemnity Corporation of America relative to bringing this action?" "Objected to for the reason that it is incompetent, irrelevant, immaterial, and not proper cross-examination. Sustained." The appellant argues the exception taken to this ruling at length.

This rule, adopted by this court in *Jessup v. Davis,* 115 Neb. 1, allowing the interest of an insurance company to be inquired into upon cross-examination, is not a right to be abused, as shown by a reversal in *Lewis v. Beckard,* 118 Neb. 533, and any attempts to enlarge upon this very limited field of inquiry should be discouraged by the trial court. *Jennings v. Biurvall,* 122 Neb. 551. A careful examination fails to disclose that the appellant was prejudiced in any way by the ruling of the court.

Objection is taken to instruction No. 9, given by the court on its own motion. This instruction is as follows:

"It is a rule of the road that, where two persons approach an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. This of itself does not necessarily constitute negligence but is a circumstance that you may consider along with other evidence in the case in determining the question of negligence."

The court, in instruction No. 8, told the jury that both of the brothers were members of the fire department, and that it was their duty to proceed to a fire with speed and dispatch, and that conduct which would be considered negligent and reckless in a private citizen may not be improvident on the part of a fireman. He may take greater risks than a private citizen, and yet be regarded as within the rule of ordinary care.

It is argued that the better rule of law is that speeding ordinances and other such regulations do not apply to public servants such as a fireman, or to police officers. Would it not be absurd if a policeman was attempting to catch a criminal who was escaping, and the policeman would have to stop at every stop-light he came to, and thus let the criminal escape?

Ordinary speed regulations, and other regulations as to the use of public streets, do not apply to fire apparatus responding to a fire alarm and hastening to reach a fire. Such a situation presents an emergency, which should not be held to come within a road regulation. *Ring v. Minneapolis Street R. Co.*, 173 Minn. 265; *Hubert v. Granzow*, 131 Minn. 361, Ann. Cas. 1917D, 563.

Yet, in this case the giving of instruction No. 9 was not prejudicial in any way, for the drivers of the two cars involved were each firemen; and it is needless to say that, when these two speeding firemen met, by observance of the rules a life might have been spared.

We have examined all of the other errors set out, but finding no reversible error in the judgment of the district court, the same is

AFFIRMED.