WILLIAM NIKLAUS, FOR THE BENEFIT AND ON THE BEHALF OF THE CITY OF LINCOLN, NEBRASKA, A BODY POLITIC, AND THE TAXPAYERS AND RESIDENTS OF SAID CITY, APPELLANT, V. ABEL CONSTRUCTION COMPANY, A DOMESTICATED FOREIGN CORPORATION, ET AL., APPELLEES.

83 N. W. 2d 904

Filed June 28, 1957. No. 34145.

*Herbert W. Baird,* for appellant.

*Woods, Aitken & Aitken,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action brought by William Niklaus "for the benefit and in behalf of the City of Lincoln, Nebraska, a body politic," as recited in the caption of the petition and as recited in the body of the petition "for benefit of city of Lincoln." The defendants are Abel Construction Company, a corporation, and "Universal Surety Company."

The petition recited that plaintiff is a citizen and taxpayer and that the city of Lincoln is a municipal corporation operating under a Home Rule charter. It recited that a demand upon the mayor and city council to bring the action would be useless and that immediate action was necessary to protect the citizens and taxpayers.

The petition then, in nine separate causes of action, alleged that the city of Lincoln entered into paving contracts with the Abel Contruction Company; that the Universal Surety Company provided the performance bond; and that the contracts are illegal and void. It further alleged that payments by the city had been made under the contracts in amounts unknown to the plaintiff and that future payments would be made unless enjoined. It prayed for judgment "for benefit of city of Lincoln, Nebraska," in the sum of $1,000,000 and for a permanent injunction to prevent future payments.

The petition was filed May 2, 1953. On May 29, 1953, an "Amended and Supplemental Petition at Law" was filed. This petition in its caption recited, "William

Niklaus, for the benefit and on the behalf of the City of Lincoln, Nebraska, a body politic and the tax-payers and residents of said City, Plaintiff." The amended petition begins, "* * * plaintiff for the benefit of the City of Lincoln, * * *."

Among other things it alleged that on May 14, 1953, demand was made on the mayor and council to refrain from further performance of all contracts referred to in the amended petition and to bring action to recover monies "illegally paid" thereunder and that the demand had not been complied with. Although not stated in the petition, it appears from the briefs that this allegation as to a demand is based on section 15-322, R. R. S. 1943. Petitioner then in 24 separate causes of action made allegation about 24 paving contracts between the city and Abel Construction Company wherein the Universal Surety Company furnished the performance bond. It alleged that the contracts were "corrupt, fraudulent, illegal and void." It sought a recovery of judgment on the 24 causes of action in the sum of $740,948.60, "for the benefit and on behalf of the City of Lincoln, Nebraska, a body politic and the tax-payers and residents of said City."

Issues were made and trial was had. At the close of all the evidence defendants moved for a dismissal and judgment for each of them on three grounds: (1) The amended petition did not state facts sufficient to constitute a cause of action; (2) the evidence was insufficient to sustain a judgment in favor of the plaintiff; and (3) "The record now shows that William Niklaus, plaintiff herein, has engaged in illegal and unauthorized practice of law in connection with the institution and prosecution of this action and the various proceedings therein. And said unlawful and unauthorized conduct has nullified the entire proceedings."

The trial court made findings of fact, dismissed the action, and taxed costs to the plaintiff.

Plaintiff appeals. Defendants here ask for affirmance

urging, among other reasons, that above quoted from their motion in the trial court.

Mr. Niklaus was admitted to the practice of the law at the bar of this court on the 1st day of July 1914.

By opinion filed June 29, 1948, Mr. Niklaus' license to practice law was revoked and he was disbarred from the further practice in this state. That order has not been modified or set aside. State ex rel. Nebraska State Bar Assn. v. Niklaus, 149 Neb. 859, 33 N. W. 2d 145.

We are then at the outset confronted with questions that go directly to the integrity of judicial proceedings and the administration of justice in this state.

The first question is: Was Mr. Niklaus practicing law in this case contrary to the order of disbarment? If that question is answered in the affirmative, then the next question is: What is its effect on the litigation here involved?

The evidence is that the petition in this action was drafted by Herbert Baird, a member of the bar of this state. It is signed by Mr. Niklaus as plaintiff and beneath that, "Herbert Baird Atty for Pff." The amended petition bears Mr. Niklaus' personal signature and beneath that, "By Herbert Baird Atty for Pff." It is obvious that Mr. Niklaus' signature was not signed "by" Mr. Baird. Mr. Niklaus filed the original petition with the clerk of the district court.

The praecipe for the issuance of summons filed with the original petition bears the personal signature of Mr. Niklaus. Mr. Baird did not sign the praecipe.

Section 25-501, R. R. S. 1943, provides: "A civil action must be commenced by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued thereon."

It is obvious that Mr. Niklaus, and not Mr. Baird, caused the summons to be issued.

Section 7-112, R. R. S. 1943, provides: "Upon filing original papers in any case, it shall be the duty of an attorney to endorse thereon his name."

During the progress of this case Mr. Niklaus prepared and filed praecipes for subpoenas duces tecum to witnesses. These are signed, "William Niklaus per se." Mr. Baird's signature does not appear on these instruments.

During the progress of this case plaintiff filed some 72 interrogatories. These interrogatories were framed in collaboration with Mr. Baird, and in part contained questions suggested by Mr. Niklaus. Mr. Niklaus typed the interrogatories. He argued to the court the questions presented by the defendants' objections to the interrogatories.

A number of motions were filed in the case and argued to the court before Judges Polk and Spencer. Mr. Niklaus denied arguing these motions to Judge Polk. He did argue motions before Judge Spencer and at times when Mr. Baird was not in the courtroom. Mr. Niklaus made research of the legal questions that were involved in these motions. Mr. Niklaus argued a motion for the inspection of records.

He was asked and answered this question: "Q Now in connection with your preparation of this case have you made extensive research of law? A I have." Mr. Niklaus looked up the law and prepared several briefs. He prepared and submitted to the court a "brief in support of plaintiff's motion to strike." This contained a statement of issues, law, and an extensive argument. He likewise prepared a "brief of plaintiff on *discovery* under statutory conditions." This contains citations of decisions and argument. This brief was presented to the court by Mr. Niklaus in connection with oral argument.

Likewise before trial Mr. Niklaus submitted to the trial court a volume which he elected to call a "compilation" of authorities on municipal contracts, many of which he related to the issues involved in this litigation. Mr. Niklaus made the research involved in the compilation and denominated it as his "private property."

Likewise, by oral motion to the court made by him-

self, Mr. Niklaus dismissed two of the 24 causes of action contained in the amended petition.

When the case came on for trial Mr. Baird appeared for the plaintiff and conducted the trial during the presentation of the case-in-chief.

During the defendants' case-in-chief Mr. Niklaus objected to the admission of certain exhibits "as already in. Encumbering the record." Again on two occasions when exhibits were offered he advised the court, "No objection."

The defendants offered a witness for cross-examination and Mr. Niklaus started to conduct the examination. Objection was made that he was not licensed to practice law. Mr. Niklaus then "relinquished any right" he had to examine the witness, and Mr. Baird then proceeded to conduct the examination. This is the first time that such objection was made.

The receipt for the bill of exceptions in this case is signed "Herbert W. Baird William Niklaus" over the typewritten words "Counsel for Plaintiff." The William Niklaus signature is obviously the personal signature of Mr. Niklaus. The signature "Herbert W. Baird" bears no similarity to the admitted signatures of Mr. Baird. It does not appear that Mr. Baird participated in the settling of the bill of exceptions.

Plaintiff's briefs here bear the name of Mr. Baird as attorney for the plaintiff.

The case was put on the final call and set for oral argument to be had on May 7, 1957. On April 29, 1957, Mr. Niklaus filed in this court, over his own signature, a motion for an order permitting him to present the oral argument. This was based on the serious illness of Mr. Baird and plaintiff's "clear right to present such argument" under the provisions of sections 7-101 and 7-110, R. R. S. 1943.

The notice of the motion was served on defendants May 1, 1957. Defendants resisted the motion on the ground that this action was a representative and class

action and that Mr. Niklaus was without authority to argue it.

On May 6, 1957, Mr. Niklaus appeared in court, addressed the court, and submitted the motion without argument. We denied the motion. Thereafter and on the same day Mr. Niklaus filed here a motion for a continuance so as to obtain the service of counsel. We denied the motion.

On May 7, 1957, the case was called for oral argument. Mr. Niklaus addressed the court and submitted the cause on the record and the briefs.

There can be no question but that Mr. Niklaus was here engaged in the practice of the law. Beginning with the preparation and filing of the praecipe for summons down to the submission of this cause to this court, he was actively, openly, and persistently performing the duties and exercising the powers of a member of the bar of this state. See State v. Fisher, 103 Neb. 736, 174 N. W. 320.

Patently he was directing the conduct of this litigation, at times in collaboration with Mr. Baird and at times independently of him. The professional ethics of Mr. Baird's conduct in this matter is not here presented and is not determined.

The question here is not that of Mr. Niklaus' right to bring this action as a taxpayer. The question is his right to appear in this action and perform the duties and exercise the powers of a member of the bar of this state.

Mr. Niklaus contends that he has not engaged in the illegal practice of the law. He relies here upon the provisions of sections 7-101 and 7-110, R. R. S. 1943. Section 7-101, R. R. S. 1943, provides: "No person shall practice as an attorney or counselor at law, or commence, conduct or defend any action or proceeding to which he is not a party, either by using or subscribing his own name, or the name of any other person, or by drawing pleadings or other papers to be signed and

filed by a party, in any court of record of this state, unless he has been previously admitted to the bar by order of the Supreme Court of this state. No such paper shall be received or filed in any action or proceeding unless the same bears the endorsement of some admitted attorney, or is drawn, signed, and presented by a party to the action or proceeding. It is hereby made the duty of the judges of such courts to enforce this prohibition. Any person who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding one hundred dollars, or imprisoned in the county jail not exceeding thirty days; but this section shall not apply to persons admitted to the bar under preexisting laws."

Section 7-110, R. R. S. 1943, provides: "Plaintiffs shall have the liberty of prosecuting, and defendants shall have the liberty of defending, in their proper persons."

The expression "in their proper persons" contained in section 7-110, R. R. S. 1943, patently is derived from the Latin "in propria persona" and means in their own persons. See Tayler's Law Glossary, pages 249 and 400. The question, then, is whether or not this action is one in which Mr. Niklaus may appear and prosecute in his own person without the services of a member of the bar of this state.

The action is one brought for the benefit of the city of Lincoln, a municipal corporation. The causes of action are alleged to be its causes of action. The judgment sought, if recovered on the causes of action, would be the judgment of the city of Lincoln and no part thereof would be the judgment of Mr. Niklaus in his own person. It is axiomatic that a corporation cannot appear in its own person. It must appear by a member of the bar.

It is obvious that Mr. Niklaus is without authority to appear and represent the city of Lincoln as its lawyer

in this litigation. That, however, is exactly the effect of what he did here.

The rule is stated as follows: "Although taxpayers have an interest which entitles them to protect the interest of the municipal corporation, the cause of action remains in the corporation, and final relief is for its benefit." 64 C. J. S., Municipal Corporations, § 2138, p. 951.

Mr. Niklaus in his petition herein alleged that he brought this action as a citizen and taxpayer for the benefit of the city of Lincoln. He signed the amended petition "for the benefit and on behalf of the City of Lincoln, Nebraska, a body politic and the taxpayers and residents of said City."

The rule is stated as follows: "If a taxpayer is permitted to maintain a taxpayer's suit, it is not in his individual right, but as the representative of the district whose interests are alleged to be jeopardized by the inefficiency or maladministration of its officers, and he has no other or higher right than the district or municipality itself could claim if the action were prosecuted in its name, and hence he can maintain the action only in cases where the district or municipality itself could do so. The derivative nature of the action is brought out forcibly in the rationale of the theory by which taxpayers' suits are maintainable as being analogous to stockholders' suits, and by the usual requirement that antecedent demand be made upon the prosecuting official of the public body to enforce the claim of such public body." 52 Am. Jur., Taxpayers' Actions, § 10, p. 7.

In a taxpayer's action potentially all of the taxpayers and citizens are parties. See Hawarden v. Youghiogheny & L. Coal Co., 111 Wis. 545, 87 N. W. 472, 55 L. R. A. 828.

As a general rule a plaintiff cannot join an individual cause of action and a representative cause of action. See, 1 C. J. S., Actions, § 97, p. 1282; Tyre v. Krug, 159 Wis. 39, 149 N. W. 718, L. R. A. 1915C 624; Archer v. City of Grand Rapids, 255 Mich. 485, 238 N. W. 267; Paradise v.

Nowlin, 86 Cal. App. 2d 897, 195 P. 2d 867; Nelson v. Smith, 107 Utah 382, 154 P. 2d 634, 157 A. L. R. 512. See, also, §§ 25-701, 25-702, R. R. S. 1943.

Section 15-322, R. R. S. 1943, contains a requirement of an antecedent demand as a condition of commencing an action of this nature for and on behalf of the city of Lincoln. If the demand is not complied with, the section authorizes a citizen to "begin and prosecute such action *in the name* of and for the benefit of the city, * * *." (Emphasis supplied.) Plaintiff alleged in his petition that such a demand would be useless. In his amended petition he alleged the demand and a failure to comply therewith.

Whether an action such as this must be brought in the name of the city by the taxpayer rather than in the name of the taxpayer is not presented for determination.

Section 15-322, R. R. S. 1943, clearly recognizes that the cause of action is that of the city and not that of the citizen or taxpayer. In Madison Metropolitan Sewerage Dist. v. Committee on Water Pollution, 260 Wis. 229, 50 N. W. 2d 424, it was held: "* * * where the officers of a public corporation refuse to put the necessary judicial machinery in motion upon demand being made therefor and failure to so act, a taxpayer may bring suit on behalf of himself and others similarly situated. * * * 'The direct injury to be remedied where the taxpayer intervenes and sets the judicial machinery in motion for that purpose, is not personal and direct to himself, but to the corporation.'"

Mr. Niklaus cannot, by the device of naming himself as a party plaintiff, convert this action into anything other than an action for the benefit of the city. Mr. Niklaus was without right to act as a member of the bar in this case. See Bay County Bar Assn. v. Finance System, Inc., 345 Mich. 434, 76 N. W. 2d 23, holding in effect that courts will not permit laymen to appear in court in a representative capacity and such a rule may not be circumvented by subterfuge.

Sections 7-101 and 7-110, R. R. S. 1943, do not apply here. On this phase of the case we adopt the language of the Supreme Court of Missouri in Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S. W. 2d 945, 125 A. L. R. 1149: "While a layman may represent himself in court he cannot even on a single occasion represent another, whether for a consideration or not."

The question then comes: What is the effect of the unlawful practice of the law by Mr. Niklaus on this litigation?

It is patent from the record that Mr. Niklaus conceived these alleged actions and admittedly made the investigations that preceded the drafting of the petitions. He has been the moving spirit in it throughout. His participation in the proceedings was not casual but persistent and continuous.

The rule is: "Proceedings in a suit by a person not entitled to practice are a nullity, and the suit may be dismissed." 7 C. J. S., Attorney and Client, § 16, p. 725.

The dismissal of a proceeding for such a cause is a drastic remedy and may not be required in all cases. The extent of the unlawful practice by Mr. Niklaus in this case requires that it be done.

This action is not taken for the benefit of lawyers who are duly admitted to the practice of the law in this state. As was said by the Supreme Court of Colorado in Bennie v. Triangle Ranch Co., 73 Colo. 586, 216 P. 718, it is "for the protection of citizens and litigants in the administration of justice, against the mistakes of the ignorant on the one hand, and the machinations of unscrupulous persons on the other, * * *." See, New Jersey Photo Engraving Co. v. Carl Schonert & Sons, 95 N. J. Eq. 12, 122 A. 307; Yount v. Zarbell, 17 Wash. 2d 278, 135 P. 2d 309; Stevens v. Jas. A. Smith Lumber Co., 54 S. D. 170, 222 N. W. 665; Jacobs v. Queen Ins. Co. of America, 51 S. D. 249, 213 N. W. 14.

The flagrant and persistent unlawful practice of law in this case by Mr. Niklaus requires that the proceedings

be held to be a nullity and the action dismissed.

The trial court properly dismissed the action. For the reasons here given, the judgment of the trial court is affirmed.

AFFIRMED.