LAWRENCE F. WEBER, ADMINISTRATOR OF THE ESTATE OF MARIE E. HICKMAN, DECEASED, APPELLANT, V. SOUTHWEST NEBRASKA DAIRY SUPPLIERS, INC., A CORPORATION, ET AL., APPELLEES.

193 N. W. 2d 274

Filed December 30, 1971. No. 37895.

Mitchell & Beatty, for appellant.

Tye, Worlock, Tye, Jacobsen & Orr, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This is an appeal by Lawrence F. Weber, administrator of the estate of Marie E. Hickman, deceased, plaintiff, from the dismissal at the close of the plaintiff's evidence of a wrongful death action against Southwest Nebraska Dairy Suppliers, Inc., a corporation, and Milford Johnson, defendants. The trial court determined the driver of the plaintiff's vehicle was negligent as a matter of law; that such negligence was imputed to Robert N. Hickman and the deceased, Marie E. Hickman, his wife; and that Robert N. Hickman was a widower and the only heir of Marie E. Hickman who

sustained pecuniary loss under section 30-810, R. R. S. 1943. We reverse.

This action involves a collision on July 23, 1969, at approximately 9:30 a.m., between a pickup truck jointly owned by the deceased and Robert N. Hickman, and a truck owned by Southwest Nebraska Dairy Suppliers, Inc., and operated by Milford Johnson, in the approximate center of an open intersection of two graveled roads 2½ miles west and 4/10 of a mile north of Elm Creek, Nebraska. Johnson, hereinafter referred to as defendant, was traveling north and the Hickman vehicle operated by Mrs. Audrey Grassmeyer, a family friend, was traveling east. Defendant had the directional right-of-way.

The Hickman pickup was partly loaded with corn which Mr. Hickman was going to feed to cattle on his pasture 1 mile east and 8 miles north of the intersection. Hickman had found chokecherries in this pasture and the evening before his wife and Mrs. Grassmeyer had decided to ride with him so they could pick the chokecherries. When they were ready to leave the Hickman farm home, Mrs. Grassmeyer was standing on the driver's side of the pickup, which she had driven before. Mr. Hickman told her, "* * * go ahead and I will open the gates." Mrs. Grassmeyer had been to the pasture before. She got into the driver's seat with Mrs. Hickman in the middle and Mr. Hickman on the other side. As they turned east on the gravel road to the north of the farm and approached the intersection, Mr. Hickman noticed some calves strung out along the fence and told Mrs. Grassmeyer "* * * just drive slow and I will count these calves." Mrs. Grassmeyer drove slowly approaching the intersection and at Hickman's request stopped the pickup about a car length west of the corner post in the southwest corner of the intersection so he could count the calves bunched in the corner. After he had counted the calves he said "* .* * they are all there." He then leaned over to move some tools on the floor under

his feet. The pickup started forward slowly; the brakes were applied; and the next thing he remembered was waking up in the hospital. The evidence would indicate that the Hickman pickup hit the left front side of the defendant's vehicle.

The decedent had been employed as a school teacher for 5 years. In addition to her teaching duties, she generally helped with the farm chores such as feeding and milking cattle, stacking hay, and buying supplies for the farm. She transacted 95 percent of the financial business of the farm; did the paperwork; filled out tax returns; and helped in the purchase of cattle. The income from her teaching job was deposited in a joint banking account and was used for paying farm expenses. The Hickmans employed no farm help.

The intersection was an open one. From the evidence and the photographs in evidence, both parties could see approaching vehicles for at least 250 feet from the intersection. The plaintiff's evidence would indicate that the defendant was negligent in not maintaining a proper lookout. The primary questions, however, are whether or not the driver of the Hickman vehicle was negligent as a matter of law, and if so whether or not her negligence could be imputed to Robert N. Hickman.

Without regard to defendant's possible negligence, we find that Mrs. Grassmeyer was guilty of negligence more than slight as a matter of law. Under ordinary circumstances, the defendant's vehicle would have the directional right-of-way. Plaintiff produced no evidence that would negative this directional right-of-way. Except for the extensive damage to the vehicles, there is no indication of the speed of the respective vehicles. If Mrs. Grassmeyer had looked before starting up, or at any time before entering the intersection, she would have seen the approaching vehicle. The photographs in evidence would indicate that the right front of the Hickman vehicle struck the left door of defendant's vehicle. At the time of impact the front of defendant's vehicle had

started across the center of the intersection.

We said in Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496: The statute (now § 39-751, R. S. Supp., 1969) is intended to avoid collisions between vehicles at intersections and the right-of-way is not to be determined by the single test of which vehicle actually entered the intersection first, if the vehicles approached or entered the intersection at approximately the same time. The driver of a vehicle who does not have the right-of-way as explained therein is not justified in taking close chances and if there is reasonable danger of collision if both vehicles proceed then it is his duty to yield the right-of-way.

In Cappel v. Riener, 167 Neb. 375, 93 N. W. 2d 36, we said: "The operator of an automobile approaching or entering an intersection is required to see another automobile approaching or entering the intersection which has been favored with the right-of-way under the statutory rules of the road and a failure to see such favored automobile is negligence as a matter of law."

Was the negligence of Mrs. Grassmeyer imputed to Robert N. Hickman? We hold that whether it was or not is a jury question.

The facts indicate Mrs. Grassmeyer was driving because Hickman asked her to so he could open some gates which were hard to open. It is undisputed that Hickman, a joint owner of the vehicle, directed Mrs. Grassmeyer to drive slowly so he could count the calves along the fence, and then had her stop approximately two car lengths from the intersection until he could count the calves bunched in the corner. After he indicated he had counted the calves he said they were all there. Mrs. Grassmeyer then accelerated the vehicle and immediately thereafter collided with the defendant's vehicle.

The rule in this state is: "Where the owner is a passenger in his own automobile while it is being operated by another, the negligence of the operator is not imputable to the owner, except where the operator is the

owner's servant or agent, or where the operator and the owner are engaged in a joint enterprise, or where the owner assumes to direct the operation of the automobile and to exercise control over it." Petersen v. Schneider, 154 Neb. 303, 47 N. W. 2d 863.

In Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107, we held that where the owner is a passenger in his own automobile while it is being operated by another, the negligence of the operator is imputable to the owner where the owner assumes to direct the operation of the automobile and to exercise control over it. This is ordinarily a question for a jury, unless the evidence is so conclusive that the minds of men could not reasonably arrive at any other conclusion, then the question is one for decision by the court as a matter of law. That is not the situation herein, and the defendant's motion to dismiss should not have been sustained.

This action is brought by an administrator under section 30-810, R. R. S. 1943, for the exclusive benefit of Robert N. Hickman, the widower and next of kin. The evidence is undisputed that Robert N. Hickman is the sole and only person sustaining pecuniary loss in the death of his wife. We have heretofore held in an action by a plaintiff for his own benefit to recover for pecuniary injury which he has suffered by reason of the death of his wife wherein the evidence discloses that plaintiff was guilty of negligence more than slight as a matter of law which proximately contributed to or caused the accident and death, it is the duty of the court to direct a verdict for the defendant. Ecker v. Union P. R. R. Co., 164 Neb. 744, 83 N. W. 2d 551; Wieck v. Blessin, 165 Neb. 282, 85 N. W. 2d 628.

We fail to perceive any distinction between a situation where the action is brought by a personal representative other than the beneficiary and one where the beneficiary himself is the plaintiff, if in both situations he is the sole and only person who can be benefited by the action and is guilty of negligence as a matter of law. If the

jury should find that the negligence of Mrs. Grassmeyer is imputable to Robert N. Hickman, then there could be no recovery herein.

Where the evidence is clear that the only person within the class for which an action may be brought under section 30-810, R. R. S. 1943, is guilty of negligence as a matter of law, it is the duty of the court to direct a verdict for defendant.

The judgment is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.

McCOWN, J., concurring in result only.

Where the evidence is inconclusive as to whether or not the owner is directing or controlling the operation of the automobile, the question is for the jury. See Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107.

On the facts here, it seems apparent that Robert N. Hickman's conduct as a matter of law did not amount to direction and control of the operation of the car at the time the accident actually occurred. He had finished the task for which he had requested Mrs. Grassmeyer to drive slowly and stop. When he had counted the calves, he said: "They are all there" and then leaned over and began to move some tools under his feet. From that point on, he was only a passenger. Even if his conduct should be held to constitute an exercise of control or the temporary assumption of the operation of the automobile, that control of operation was clearly over before Mrs. Grassmeyer began to drive the automobile again. If a request to drive slowly or to stop for a few moments at a designated location constitutes assuming control and directing the operation of an automobile, then virtually any statement which includes such a request would constitute not only an immediate assumption of control, but would also extend that control to the end of whatever journey the parties were taking, under the theories advanced by the majority opinion. This is neither logical nor reasonable. A request by an owner

passenger for a stop to permit him to get a newspaper at the start of a journey would then raise a jury issue as to whether any negligence of the driver coming after the request had been complied with should or should not be imputed to the owner. Even a stop request necessitated by an owner's urgent need for service station facilities would raise a jury question as to assumption of control of the automobile thereafter.

A more important problem here arises over the basic issue of imputation of negligence. The individual for whose death this action was brought apparently took no action, and did not even utter a word from the time the journey began. Yet it is left to the jury to determine whether or not her husband's requests to the driver made the negligence of the driver imputable to him, and then, because the husband is the sole beneficiary, barred him from any recovery against the defendant for her death.

The doctrine of imputed contributory negligence, which developed largely in the latter part of the Nineteenth Century, was based on theories of fictitious agency relationships. It is now generally recognized that such theories of agency are entirely fictitious and the doctrine of imputed contributory negligence has been largely discredited. See Restatement, Torts 2d, § 485, p. 541, et seq.

Section 485, Restatement, Torts 2d, states: "Except as stated in §§ 486, 491, and 494, a plaintiff is not barred from recovery by the negligent act or omission of a third person." Comment a under section 485 states: "The rule stated in this Section rejects, except as indicated by the reference to other Sections, the doctrine of 'imputed contributory negligence,' under which the plaintiff is barred from recovery against the defendant because the negligence of a third person, with whom the plaintiff stands in some relation, has contributed to his harm. * * *" Comment b outlines the exceptions referred to in section 485. These exceptions do not apply here. Comment c then states: "With these exceptions, the common law no longer imputes the negligence of a

third person to the plaintiff to bar his recovery for the harm he has suffered. even in situations where he would be liable for that negligence as a defendant in an action brought by a third person."

The major change in judicial position occurring between the First and Second Restatement is clearly reflected in section 485. There is a definite turn around as to imputed contributory negligence and the old "bothways test." See, Gregory, Vicarious Responsibility and Contributory Negligence, 41 Yale L. J. 831; 2 Harper and James, Law of Torts, c. 23, p. 1264; Prosser, (4th Ed.) Torts, § 72, p. 475; Weber v. Stokely-Van Camp, Inc., 274 Minn. 482, 144 N. W. 2d 540 (1966).

In addition to the fundamental imputed negligence problem, the majority opinion also applies the rule that under our death statute, where the sole beneficiary is guilty of negligence more than slight as a matter of law, it is the duty of the court to direct a verdict for the defendant. That rule in itself is quite correct, but the Nebraska cases cited, and indeed virtually all of the cases supporting the point, involve the personal negligence of the sole beneficiary. With that principle there can be little quarrel. However, the majority opinion assumes that a sole beneficiary is personally negligent whenever he is vicariously responsible for the negligence of the driver. This simply does not follow and it constitutes an even more obvious misapplication of the discredited imputed contributory negligence doctrine. The majority opinion on policy issues may be generated partially from the constricting provisions of the Nebraska Motor Vehicle Guest Act. Nevertheless, the opinion does not march to the beat of the modern judicial drum.