ROBERT HICKMAN, APPELLANT, v. SOUTHWEST DAIRY SUPPLIERS, INC., A CORPORATION ET AL., APPELLEES.

230 N. W. 2d 99

Filed May 29, 1975. No. 39704.

Mitchell & Beatty, Larry R. Demerath, and Timothy D. Whitty, for appellant.

Tye, Worlock, Tye, Jacobsen & Orr and John Icenogle, for appellees.

Heard before SPENCER, NEWTON, CLINTON, and BRODKEY, JJ., and WARREN, District Judge.

BRODKEY, J.

This is an action for personal injuries and damages sustained by the plaintiff, Robert Hickman, while he and his deceased wife, Marie Hickman, were riding as passengers in a pickup truck owned by plaintiff and his wife, and driven by their mutual friend, Audrey Grassmeyer. The truck collided at a county road intersection with a vehicle owned by the defendant, Southwest Nebraska Dairy Suppliers, Inc., and operated by its employee, defendant Milford Johnson. Plaintiff's wife was killed as a result of that accident. Thereafter, Lawrence F. Weber, duly appointed administrator of her estate, brought a wrongful death action in his own name as personal representative of the deceased wife against the same defendants named in this case for the benefit of the widower and next of kin, as provided in sections 30-809 and 30-810, R. R. S. 1943. Trial of that case was commenced in the District Court for Buffalo County, Nebraska, and at the close of the plaintiff's evidence the court directed a verdict against the plaintiff administrator and in favor of the defendants. An appeal to this court resulted in a reversal of the action of the District Court and a remand for trial on the issue of whether the negligence of the driver of the truck in which plaintiff and his wife were riding was imputable to the plaintiff; this court found that the driver, Audrey Grassmeyer, was guilty of negligence more than slight as a matter of law. See Weber v. Southwest Dairy Suppliers, Inc., 187 Neb. 606, 193 N. W. 2d 274 (1971). The case was then retried to a jury which returned a verdict against

the administrator plaintiff and in favor of these defendants. On appeal to this court, the jury verdict in the second trial of that case was affirmed. See Weber v. Southwest Nebraska Dairy Suppliers, Inc., 190 Neb. 389, 208 N. W. 2d 667 (1973).

In the present case the husband, Robert Hickman, seeks to recover on his separate cause of action for his own injuries and damages allegedly sustained by him in the accident, alleging that the negligence of these defendants was the cause of the accident and his resulting injuries and damages. The defendants filed an answer to plaintiff's petition and thereafter filed a motion for summary judgment, alleging among other things "that these defendants are entitled to a judgment as a matter of law for the reason that the prior adjudication of the facts in this matter in the case of Weber v. Southwest Dairy Suppliers, Inc., 190 Neb. 389, is *res judicata* as applied to this case, in that this case involves the same issues and subject matter and *almost* the same parties." (Emphasis supplied.) Defendants' motion for summary judgment was sustained by the District Court on June 17, 1974. In its order the court stated among other things: "Granted that these are two separate causes of action which could not be joined. We still have the question to determine where the parties were the same and the issues decided are the same that would have to be submitted in the case that is now before us, does the determination by the jury of these issues become a complete and final determination between the parties. We believe that the case of Voorhees v. Chicago & A. R. Co., 208 Ill. App. 86, where the Court said, 'A point which was directoy (sic) in issue in a former suit and was there judicially passed upon cannot again be drawn in question in any future action between the same parties or their proxies, whether the cause of action in the two suits be identical or different. Where a real party in interest has had a trial of his rights on the merits there should be an end to the litigation.'

"Also, along the same line, Keith v. Willers Truck Service, 266 N. W. 256 (S. D.)."

It should be noted in passing that the District Court in its order erroneously indicated that Robert Hickman, the plaintiff in the present action, was the administrator plaintiff in the prior wrongful death action. The fact is that Lawrence Weber was the administrator of the estate of Marie E. Hickman, deceased, and brought that action in his name, as plaintiff. See, Weber v. Southwest Dairy Suppliers, Inc., 187 Neb. 606, 193 N. W. 2d 274, 190 Neb. 389, 208 N. W. 2d 667.

Following the decision of the trial court sustaining defendants' motion for summary judgment in this case, plaintiff filed a motion for a new trial and rehearing, which motion was denied by the District Court. Plaintiff thereafter perfected his appeal to this court. We reverse and remand.

The issue in this case is whether the husband, Robert Hickman, is precluded under the doctrine of res judicata from bringing and maintaining the present action to recover for his own personal injuries and damages because of the verdict of the jury and judgment in favor of the defendants in the prior wrongful death action brought by the administrator of the estate of his deceased wife against these defendants. Under the traditional rule of res judicata, sometimes called claim preclusion, any rights, facts, or matter in issue directly adjudicated or necessarily involved in the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies. Simmons v. Mutual Benefit Health & Acc. Assn., 186 Neb. 26, 180 N. W. 2d 672 (1970); State ex rel. Weasmer v. Manpower of Omaha, Inc., 163 Neb. 529, 80 N. W. 2d 580 (1957); Wischmann v. Raikes, 168 Neb. 728, 97 N. W. 2d 551 (1959). However, there is a closely analogous doctrine which has evolved from the traditional rule of

res judicata, and has been variously referred to as collateral estoppel or issue preclusion, which have also been referred to as extensions of the rules applicable to res judicata. Vincent v. Peter Pan Bakers, Inc., 182 Neb. 206, 153 N. W. 2d 849 (1967). See, also, American Province of the Servants of Mary Real Estate Corp. v. Metropolitan Utilities Dist., 178 Neb. 348, 133 N. W. 2d 466 (1965).

We think it is clear that the instant case must be considered under the doctrine of issue preclusion or collateral estoppel, rather than under traditional res judicata, or claim preclusion, as it is obvious that the husband's claim or cause of action for his own damages in this case is an altogether different and separate claim from that which was the basis of the action by the administrator of his deceased wife's estate, brought under the statutes above referred to. In order to properly dispose of this case under the doctrine of issue preclusion it is, therefore, necessary that we examine the questions of whether or not the parties in the two suits are the same, or, if not, whether privity exists between the plaintiffs in the two actions, and further, whether the plaintiff husband in this case had control of or actively participated in the litigation involving, and trial of, his wife's wrongful death action.

To begin with, it is clear that although the defendants in the two actions were the same, the plaintiffs were not. The plaintiff in the wife's wrongful death action was the administrator of her estate, Weber; whereas the plaintiff in the instant case was the husband, Robert Hickman. However, we think it is clear that even if the husband, Robert Hickman, had been appointed administrator of his wife's estate and had brought the wrongful death action as administrator, the doctrine of collateral estoppel or res judicata would probably not have been applicable to him in the present action. In American Province of the Servants of Mary Real Estate Corp. v. Metropolitan Utilities Dist., *supra,* it is stated

that: "In order that parties for or against whom the doctrine of res judicata is sought to be applied may be regarded the same in both actions, the general rule is that they must be parties to both actions *in the same capacity or quality.*" (Emphasis supplied.)

The nature and application of the doctrine of issue preclusion or collateral estoppel was discussed and explained by this court in the case of Vincent v. Peter Pan Bakers, Inc., *supra,* and we quote from the opinion: "The doctrine of issue preclusion recognizes that limits on litigation are desirable, but a person should not be denied a day in court unfairly. American Province Real Estate Corp. v. Metropolitan Utilities Dist., 178 Neb. 348, 133 N. W. 2d 466. The employer of plaintiff's decedent having fully litigated the common issues of negligence, the problem is reduced to the effect of the employment relationship.

" 'Initially, one might say that a non-party to Suit I should not be bound by the decision in that suit * * *. In fact, the concept of preclusion is spelled out in terms of the individual who has had the incentive and the opportunity to litigate fully the matter involved. * * *

" 'In the past, such preclusion has extended beyond those persons actually involved in Suit I. A stranger to the first suit has been precluded, as opposed to the winning party in Suit I, through the use of various rationales. * * *

" 'The courts have talked in terms of a close relationship, privity, between a participant in the first suit and the person to be precluded in the second. Involved seems to be the idea that the precluded party's interests were represented in the first suit, or that the precluded party should have no greater interest than did the participant in the first suit. * * * One party having had his day in court and having lost, the related party —the one in privity—is precluded. This is justified in terms of the relationship of the parties. * * *

" 'Apart from judgments which have effect qua facts,

it is clear that judgments can have conclusive effect against persons who were not parties to the original action. In attempting to decide how far the concept of preclusion should apply, it is well to consider the underlying rationale of judicial preclusion and preclusion generally. In all cases in which a person finds himself subject to preclusion generally, either (1) he has had the opportunity to litigate the matter or (2) his interests have been adequately represented in the litigation of the matter. * * *

" 'It would seem to be entirely reasonable to allow preclusion against non-parties to Suit I so long as they are adequately represented and protected in that suit. At this point there would seem to be a weighing process involved. Considered should be the saving of the time of the court, the adequacy of protection extended, and other relevant variable factors. * * *

" 'This idea of using a judgment against a person not a party to the first suit is not as well developed as is the use of a judgment by a non-party against a party to the first suit. * * * Since the whole area is in a state of flux, it is difficult to chart the development of the future, * * *.' 50 Iowa L. Rev. 27, Preclusion/Res Judicata Variables: Parties, pp. 59-60, 74-75."

We now examine whether or not privity existed between the plaintiff, Hickman, and the administrator plaintiff in the wrongful death action, or between the plaintiff and his deceased wife, Marie Hickman. In Schurman v. Pegau, 136 Neb. 628, 286 N. W. 921 (1939), this court defined the term privity as follows: " 'Privity depends upon the relation of the parties to the subject-matter, rather than their activity in a suit relating to it after the event. Participation in the defense because of general or personal interest in the result of the litigation does not make one privy to the judgment. Stryker v. Goodnow, 123 U. S. 527, 540.' Old Dominion Copper Mining & Smelting Co. v. Bigelow, 203 Mass. 159, 216, 89 N. E. 193.

" 'Privity implies a relationship by succession or representation between the party to the second action and the party to the prior action in respect to the right adjudicated in the first action.' Stamp v. Franklin, 144 N. Y. 607, 39 N. E. 634." See, also, Restatement, Judgments, § 83, Comment a, p. 389; Benson v. Wanda Petroleum Co., 468 S. W. 2d 361 (Tex., 1971).

It is the contention of the defendants that although Robert Hickman was not the named plaintiff in the Weber cases, *supra,* it was his interests and his interests only that were being represented by Weber as the administrator of the estate of plaintiff's deceased wife, Marie Hickman. It is true that in the Weber cases, *supra,* this court found that Robert Hickman was a widower, and the only heir of Marie E. Hickman who sustained pecuniary loss under section 30-810, R. R. S. 1943; and that the exclusive beneficiary of any recovery would be Robert Hickman. However, Robert Hickman was not a named party in the Weber cases. This necessitates an examination of sections 30-809 and 30-810, R. R. S. 1943, which represent Nebraska's version of the Lord Campbell's Act. It is clear that the Nebraska wrongful death statute vests the right of action exclusively in the personal representative, rather than the ultimate beneficiaries of it. See, § 30-810, R. R. S. 1943; Stevenson v. Richardson County, Nebraska, 9 F.R.D. 437 (1949), and Nebraska cases cited therein. Section 30-810, R. R. S. 1943, further provided, however: "The amount so received in settlement, or recovered by judgment, shall be reported to and paid into such court for distribution, subject to the order of such court, to the persons entitled thereto *after a hearing thereon* and after notice of such hearing and of the time and place thereof has been given to all persons interested by publication * * *." (Emphasis supplied.) This makes it clear that no apparent heir or beneficiary under the wrongful death statute has any vested right to any of the proceeds recovered in said action until after a hear-

ing has been held before the county court, and a determination made by the court as to who is entitled to receive the proceeds and how much. There is no vested interest in any person in the proceeds of such action at the time the suit is filed. It may well be that one who appears to be a probable recipient of benefits of a wrongful death action may turn out not to be so at all, and may not receive any of such benefits. See, for example, Goeres v. Goeres, 124 Neb. 720, 248 N. W. 75 (1933). Furthermore, we think it is clear that a recovery under the wrongful death statute is not for the benefit of the estate of the decedent, but is for the benefit of the heirs of the decedent in the amount of damages sustained by them, and the proceeds of the recovery are not assets of the decedent's estate. Moore v. Omaha Warehouse Co., 106 Neb. 116, 182 N. W. 597 (1921). This being so, there would also be no privity between the plaintiff herein and his deceased wife. The general rule is that there is no legal privity between a husband and wife in such a sense that a judgment for or against the one will conclude the other, where the action concerns their separate property, rights, or interests not derived from each other. 50 C. J. S., Judgments, § 798, p. 342.

The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies is sometimes expanded to include as parties or privies a person who is not technically a party to a judgment or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised. 46 Am. Jur. 2d, Judgments, § 535, p. 688. In this case, it is clear that the plaintiff could not have brought this action in his own name under the Nebraska wrongful death statute. Furthermore, even if the plaintiff had been appointed administrator of his wife's estate, he probably could not have joined his wife's wrongful death action with his

personal action in the same suit. Niklaus v. Abel Constr. Co., 164 Neb. 842, 83 N. W. 2d 904 (1957). Although defendants suggest, by way of innuendo, in their briefs that the plaintiff could have controlled his wife's wrongful death action, there is nothing in the record to substantiate in any way that he actually did so. It is true that plaintiff did testify as a witness in the trial of his wife's wrongful death action, nevertheless this fact would not in any way be controlling. In Cockins v. Bank of Alma, 84 Neb. 624, 122 N. W. 16 (1909), this court stated: "Counsel argue that, because at Cockins' request Porter & Griffen employed an attorney to assist in the defense of said cause, they are bound by the judgment. There is nothing in the record to indicate that Porter & Griffen were given the control of the suit, nor that they had any right to appeal from the judgment. They did not instigate the litigation nor did Cockins represent them therein. One may employ counsel to assist a litigant, or may testify as a witness in his favor or give other active support to his cause in court, without becoming a party to the record or bound by the judgment rendered. Schribar v. Platt, 19 Neb. 625; Williamson v. White, 101 Ga. 276; Loftis v. Marshall, 134 Cal. 394; State v. Johnson, 123 Mo. 43; Litchfield v. Goodnow's Adm'r, 123 U. S. 549."

In its order sustaining defendants' motion for a summary judgment in this case, the District Court cited and principally relied upon a 1917 Illinois case, Voorhees v. Chicago & A. R.R. Co., 208 Ill. App. 86. However, in 1962 the Supreme Court of Illinois decided the case of Smith v. Bishop, 26 Ill. 2d 434, 187 N. E. 2d 217, a case strikingly similar, both as to facts and legal principles involved, to the present case. It appears from the facts of that case the administrator of the estates of Theda Smith's daughters had previously brought a cause of action for the wrongful death of two infant children killed in an accident, charging negligence against the father of the children with whom the children were riding, and

against the driver of the milk truck with which the father's vehicle collided. In that case, as in the present case, verdict was for the defendants. Thereafter, the mother, Theda Smith, brought an action against the same defendants for her own personal injuries received in the same accident. In that case, as in the present case, a summary judgment was entered for the defendants on the ground of estoppel by verdict (collateral estoppel). The Supreme Court of Illinois reversed the judgment and remanded the cause to the trial court with directions to deny the motion for summary judgment. In its opinion, the court stated as follows: "In the case at bar it is obvious that the claim or cause of action for wrongful death of a child is not the same as the claim or cause of action for Mrs. Smith's personal injuries. The bar, if any, must therefore be by way of estoppel by verdict, in which it must be shown that the identical question—i.e., whether the truck driver was guilty of negligence and the deceased driver guilty of wilful and wanton misconduct—was decided in the wrongful death case. One of the plaintiff's arguments to avoid estoppel is that since the verdict was a general one it might have been based upon a failure to find damages, rather than upon a failure to find liability, and that there was therefore no determination of the specific issue involved here.

"We find it unnecessary to further consider this argument, since we think there is no identity of parties, within the meaning of the doctrine of *res judicata*. The basis of the doctrine is that the party to be affected, or someone with whom he is in privity, has litigated or has had an opportunity to litigate the same matter in a former action. (Hedlund v. Miner, 395 Ill. 217, 229-230; Newberry Library v. Board of Education, 387 Ill. 85.) The law is clear that one is not estopped or barred by a prior adjudication if he was not a party to such action and does not stand in the relation of privy to one who was a party. Ohio National Life Ins. Co. v. Board of Education, 387 Ill. 159.

"That Mrs. Smith was not a party to the wrongful death action is evident from the fact that she was not named as such therein, did not appear, and had no right to adduce testimony, cross-examine witnesses or otherwise control the prosecution thereof. (See Schafer v. Robillard, 370 Ill. 92; Orthwein v. Thomas, 127 Ill. 554, 571.) Nor was she in privity with the administrator of the childrens' estates, even though she was one of the next of kin and a beneficiary of the cause of action for wrongful death. A privy to a judgment is one whose succession to the rights of property thereby affected occurred after the institution of the particular suit, and from a party thereto. (Schafer v. Robillard, 370 Ill. 92; Orthwein v. Thomas, 127 Ill. 554.) Privity contemplates a mutual or successive relationship to the same property rights which were the subject matter of prior litigation. (Sweeting v. Campbell, 2 Ill. 2d 491, 496.) Mrs. Smith did not acquire her rights in this action from the administrator of the childrens' estates, nor is her relationship to such rights either mutual with or successive to that of the administrator. He had no beneficial interest but possessed sole right of action or control over the litigation. Mrs. Smith, as next of kin, had no right of action or control over the litigation but merely possessed a beneficial interest in the proceeds. In the case at bar, the fact that Mrs. Smith was a beneficiary in the wrongful death case did not make her a plaintiff therein. Nor did she succeed to the right of action or in any other manner become privy thereto so as to bring her within the rule of estoppel by verdict." We are greatly persuaded by the facts and reasoning of Smith v. Bishop, *supra*; and, although we concede that the authorities from other jurisdictions are divided on the questions involved, we believe the conclusions reached in that case are sound and represent the better view.

Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to a prior suit or as a

privy; and, where not so, that at least the presently asserted interest was adequately represented in the prior trial. Benson v. Wanda Petroleum Co., *supra*; Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L. Rev. 27 to 76 (1964). We do not believe that the plaintiff should be denied his day in court under the facts of this case, notwithstanding the possibility that the ultimate result may be the same as in the prior actions brought on behalf of the estate of his deceased wife. We, therefore, hold that plaintiff is not barred under the doctrines of res judicata or issue preclusion from prosecuting his action for personal injuries and damages, and we reverse the judgment of the District Court and remand the cause for such further proceedings as may be required.

REVERSED AND REMANDED.

SPENCER, J., dissenting.

I respectfully dissent because I believe the trial court properly sustained the motion for summary judgment. Recovery for the plaintiff is barred by issue preclusion.

Weber v. Southwest Nebraska Dairy Suppliers, Inc. (1971), 187 Neb. 606, 193 N. W. 2d 274, was an action brought by the administrator of the estate of plaintiff's wife, arising out of the same accident covered by the instant case. In that case we found that Robert N. Hickman was the sole and only person sustaining pecuniary loss in the death of his wife. The question involved was whether the negligence of the driver of the car, who was negligent as a matter of law, was imputable to Robert N. Hickman, the plaintiff herein. We held this was a jury question, reversed a dismissal at the close of plaintiff's evidence, and sent the case back for a trial on that issue. The jury returned a verdict for the defendants.

In 187 Nebraska at 611, we said: "We fail to perceive any distinction between a situation where the action is brought by a personal representative other than the beneficiary and one where the beneficiary himself is

the plaintiff, if in both situations he is the sole and only person who can be benefited by the action and is guilty of negligence as a matter of law."

In 187 Nebraska at 612, we held that if the jury should find that the negligence of Mrs. Grassmeyer was imputable to Robert N. Hickman then there could be no recovery therein. Robert N. Hickman was the only person who could have benefited from the previous action. If he could not recover in that case, he should not in this one. The issue in that case on liability, and the issue in the instant one, are exactly the same. The finding in 187 Neb. 606 should preclude a recovery herein.

CLINTON, J., joins in this dissent.

NEWTON, J., concurring.

I concur in the opinion of Brodkey, J. In doing so I appreciate that the authorities are not unanimous on the question presented. I note, however, that in only a very few instances have the courts extended the rule of collateral estoppel to cases such as this. For the most part the decisions appear to follow Restatement, Judgments, an analysis of which follows:

Section 85 provides: "(1) Where a judgment is rendered in an action in which a party thereto properly acts on behalf of another, the other is * * *

"(b) not bound by or entitled to the benefits of the rules of res judicata with reference to his interests not controlled by the party to the action."

The Comment on clause (b) states: "b. *Scope of Section.* Subsection (1) deals with situations in which the first action is brought or defended by a representative on behalf of a person who is not a party, and the second action is brought or defended either by a representative of such a person or by the person himself."

In Comment L on Subsection (1), clause (b), it is stated: "L. *Interests of beneficiary not in charge of fiduciary.* A fiduciary normally has no power to bind a beneficiary by any act except with reference to matters intrusted to him; as to other matters a judgment for or

against him does not affect the beneficiary. In actions brought by or against a fiduciary the rules of res judicata do not operate to create rights in favor of, or burdens against, the beneficiary or one on whose account the action was brought or defended with reference to matters which were not intrusted to the fiduciary. This is true where the fiduciary or his successor is a party to a subsequent action in which res judicata is claimed (see § 80) and also where the beneficiary is a party to such subsequent action."

Illustration 13 is as follows: "13. A is trustee for B of Blackacre. While driving his automobile, C loses control of the car and it crashes into a house on Blackacre in which B is, injuring both B and the house. A sues C for the harm to the house. Judgment is given for C on the ground that he was not negligent. B then brings suit against C for personal injury. The prior judgment in favor of C is not res judicata upon the issue of C's negligence and C does not have the defense that the injury to the house and to the person of B was a single cause of action."

Under Nebraska law the former action to recover for the death of plaintiff's wife could have been brought and controlled *only* by the administrator of her estate. See § 30-809, R. R. S. 1943. On the other hand, such administrator could not bring an action like the one now before us in which plaintiff seeks recovery for his own personal injuries.